679 N.E.2d 840 (1997)
228 Ill. App.3d 157
223 Ill.Dec. 389
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Allen Bernard MANIKOWSKI, Defendant-Appellant.
No. 5-94-0627.
Appellate Court of Illinois, Fifth District.
May 2, 1997.
Rehearing Denied June 6, 1997.
*841 Daniel M. Kirwan, Deputy Defender, Lawrence J. O'Neill, Assistant Defender, Office of the State Appellate Defender, Mt. Vernon, for Defendant-Appellant.
Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, James R. Benson, Contract Attorney, State's Attorneys Appellate Prosecutor, Mt. Vernon, for Plaintiff-Appellee.
Presiding Justice KUEHN delivered the opinion of the court:
Our founding fathers enshrined certain freedoms into the constitution. Those freedoms are our birthright, a legacy passed down from our ancestors. Although we tend to take them for granted, the liberty they embody and guarantee is the strength of our democracy. Liberty has been our nation's call to arms. For some of us, liberty's guarantee has not come easy.
Defendant was drafted into the Army in 1968. Thereafter, he was sent to war in South Vietnam. In 1970, he was transported home. He spent six months in an Army hospital healing wounds sustained from enemy engagement. Battlefield scars are not the only evidence of his bravery. He returned home with two Purple Hearts, the Bronze Star, and the Army Commendation Medal for meritorious achievement in combat. He returned home a war hero. That home is now an Illinois prison cell.
*842 This is a case where a man who placed his life in harm's way for the sake of his country's values, who stood up for liberty's promise, did not enjoy its full measure. His trial differed markedly from trials enjoyed by most defendants. He was not allowed to confront the witnesses against him or to participate in his defense. Such rights, traditional to our notion of fair play, were bypassed.
Seven years ago, a trial was conducted in defendant's absence. He was convicted and sentenced to a 10-year prison term. According to the State, defendant was afforded every right traditionally afforded the criminally accused. If those rights were lost, it was defendant's fault. According to the State, defendant elected not to avail himself of his rights by willfully failing to attend trial.
Defendant now claims that his failure to appear for trial was not his fault and was due to events beyond his control. He seeks an opportunity to present evidence to establish that he did not willfully avoid trial or voluntarily surrender constitutional rights associated with trial presence.
This appeal asks us to overturn a summary dismissal of defendant's postconviction petition. The petition, supported by defendant's affidavit, asserts that a breakdown in travel plans prevented defendant's timely appearance for trial. Defendant seeks an opportunity to be heard on why he failed to attend his trial. He ultimately hopes to prove that his conviction was a product of an unjustified forfeiture of his constitutional rights.
Initially, we note that the hearing defendant seeks is readily available under the same statutory provisions that permitted the trial to be conducted in his absence, while the hearing he seeks in this appeal may not withstand a motion to dismiss the petition. See 725 ILCS 5/115-4.1(e) (West 1992). Our decision is confined to the order from which defendant appealed. The summary dismissal order mounts a question of whether defendant's postconviction petition is frivolous and patently without merit. For the reasons set forth in this opinion, we reverse the trial court's summary dismissal and remand for further proceedings.
Defendant and his brother, James, were arrested in the summer of 1987. Defendant was working for a Florida company that contracted to deliver a car from Florida to its Chicago owner. En route to Chicago, defendant was stopped for speeding in Massac County. The State police were primed to suspect drugs under the circumstances of defendant's trip. They asked for consent to search the car and its belongings. According to the troopers, defendant, free to resume his trip and leave their presence, chose to execute a consent to search. The search engaged several troopers and their dog. Defendant was asked to drive the car to a nearby service station, where it was placed on a rack and its undercarriage was examined. A compartment housing a package of cocaine was found under the car.
Defendant disavowed any knowledge of the compartment or the drugs it contained. The defendant's brother, the car's owner, and a Florida businessman also denied knowledge. Of the various suspects whose ignorance was in question, defendant was the only one empowered to prevent detection of the drugs. Defendant's ignorance was supported by his willingness to allow the search when free to drive away.
On June 25, 1990, he failed to appear for his scheduled trial. A decision was reached to start without him. He claims that the judge was told that he was unavoidably delayed. He claims that the judge was asked to delay the trial until he could get to court. He claims that he arrived two days late only to learn that his trial was over, his defense went unheard, and the jury was about to deliberate his fate.
On June 27, 1990, fearing the outcome of a trial he did not attend, defendant violated his bail conditions and fled the jurisdiction of the State of Illinois. He remained a fugitive from justice until 1993. He was discovered living an unremarkable life near his hometown of Clinton, Iowa. In August of 1993, he became a prisoner of the State of Illinois. He currently serves a 10-year prison term imposed on the verdicts returned in his absence.
*843 Defendant has no idea of what happened at his trial. He lacks any firsthand knowledge of what happened. Moreover, he cannot consult a record of what happened. There is no report of proceedings. The trial cannot be chronicled because the notes taken to preserve what happened have disappeared.
Presumably, the judge determined, upon an affirmative tender of substantial evidence from the State, that defendant willfully avoided trial. See Ill.Rev.Stat.1989, ch. 38, par. 115-4.1. Presumably, trial proceeded on the premise that defendant voluntarily surrendered his rights as a matter of choice.
In August of 1994, defendant petitioned for postconviction relief. The petition was summarily dismissed as frivolous and patently without merit.
Defendant's appeal tenders two reasons for the reversal of the summary dismissal. One of those reasons is ineffective assistance of postconviction counsel. Defendant raises the issue of counsel's failure to pursue a collateral attack of the conviction by a motion pursuant to section 115-4.1(e) of the Code of Criminal Procedure of 1963.
Section 115-4.1(e) provides:
"When a defendant who in his absence has been either convicted or sentenced or both * * * appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing * * * must be held before any such request may be granted. At such a hearing both the defendant and the State may present evidence." 725 ILCS 5/115-4.1(e) (West 1992).
Since defendant seeks a hearing to establish the nonwaiver of his bypassed rights and section 115-4.1(e) requires such a hearing, defendant argues that counsel was incompetent in filing a postconviction petition rather than a motion pursuant to section 115-4.1(e).
The thrust of the postconviction petition challenges the nonwaiver of rights lost by virtue of trial in absentia. In light of the substance of defendant's claim, it is difficult to understand the strategy behind counsel's course of action. It defies reason to consciously forego a section 115-4.1(e) motion.
The petition presents a serious question of timeliness. It is clearly filed beyond the time constraints imposed on postconviction relief under section 122-1 of the Code of Criminal Procedure of 1963. 725 ILCS 5/122-1 (West 1992). The question is joined by the allegation that delay was not due to defendant's culpable negligence. Such a question does not arise under section 115-4.1(e). The potential relief it provides is not limited by the passage of time. Moreover, section 115-4.1(e) requires the precise evidentiary hearing unsuccessfully pursued by the petition.
These obvious advantages are overshadowed, however, by the fact that a section 115-4.1(e) motion clears a path to test error that occurred in the conduct of defendant's trial. Postconviction petitions must demonstrate a process flawed by error of constitutional magnitude. Such petitions do not subject trial error to judicial review. A section 115-4.1(e) motion, however, opens the entire underlying judgment and sentence to further scrutiny. See 725 ILCS 5/115-4.1(g) (West 1992); People v. Partee, 125 Ill.2d 24, 125 Ill.Dec. 302, 530 N.E.2d 460 (1988). Since defendant's conviction and sentence have never been reviewed, even an unsuccessful effort pursued under section 115-4.1(e) harbors an advantage. It provides a direct appeal of the conviction and sentence.
Whether pursuit of a less advantageous course constitutes constitutionally deficient representation is a question we need not reach. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant suffers no prejudice by virtue of counsel's choice. Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. We measure prejudice by whether counsel's conduct resulted in an adverse outcome that, but for counsel's error, might otherwise have been different. People v. Moore, 133 Ill.2d 331, 339, 140 Ill.Dec. 385, 389, 549 N.E.2d 1257, 1261 (1990).
Counsel's pursuit of postconviction relief under section 122-1 does not foreclose pursuit of a section 115-4.1(e) motion. Partee, *844 125 Ill.2d at 31-32, 125 Ill.Dec. at 305, 530 N.E.2d at 463. We refuse to find prejudice as a result of representation that does not preclude the precise remedy that draws that representation into question. A section 115-4.1(e) motion remains a viable, albeit untried, collateral remedy available to defendant. We note again that defendant can obtain the hearing he seeks pursuant to section 115-4.1(e). He need only file such a motion.
The other reason tendered for a reversal of the petition's summary dismissal directly challenges the order. Defendant argues that the petition makes a substantial showing of a constitutional claim and merits a hearing.
The State's initial counter to this contention is an attack on the timeliness of the petition. It argues that defendant waited too long to file for relief and that delay was clearly defendant's fault. Since this matter did not proceed beyond summary dismissal, the question of the petition's timeliness was not raised or addressed below. We refrain from a ruling based on a theory not considered and not a part of the decision from which defendant appealed.
We address the summary dismissal order. It is based on a determination that the petition is frivolous and patently without merit.
The petition alleges the deprivation of the right to be present at trial. This right envelops a host of rights guaranteed to the criminally accused. These rights remain inviolate. Despite the value assigned to them, they can be waived by defendant's voluntary absence from trial. People v. Davis, 39 Ill.2d 325, 330, 235 N.E.2d 634, 636-37 (1968).
A trial in absentia, by definition, involves the deprivation of constitutional rights. If rights are not voluntarily waived by willful avoidance of trial, it follows that the proceedings are constitutionally infirm.
Defendant sought a hearing to prove that he had not willfully avoided trial. Hence, he sought to establish that he had not voluntarily surrendered the constitutional rights enjoyed by defendants who attend trial. He attached an affidavit that detailed his efforts to appear. The affidavit sets forth the following facts.
On three prior occasions, defendant appeared on time for court proceedings. Defendant was on notice of his trial setting. He scheduled his travel from California to permit his presence for the start of trial. He boarded a plane from California on June 24, 1990. The flight included a stop in Phoenix, Arizona. The plane landed in Phoenix but did not depart due to heat and weather conditions. Defendant contacted his lawyer, advised her of his predicament, and requested her to ask the court to continue his case until he could get to Metropolis.
Defendant's plans for travel from St. Louis to Metropolis were frustrated by his late arrival in St. Louis. He boarded the first available bus headed to Paducah, Kentucky. It left St. Louis the evening of June 26, 1990.
Defendant arrived in Paducah the morning of June 27, 1990, unaware that his trial was in progress. He did not immediately travel the final 10 miles to the Metropolis courthouse. He called his lawyer and was told that she was in court.
Defendant did not report to court. He waited until midday, when he again called his lawyer. Defendant and his lawyer engaged in conversation. As a result of the conversation, defendant grew uneasy about his situation. His lawyer was insistent that he appear in court.
Thereafter, he called his brother's lawyer. His brother was a codefendant. His brother's lawyer detailed the week's events. He told defendant that the trial started without him the morning of June 25, 1990. He told defendant that his witnesses were not heard, that the trial was over, and that jury deliberation on the verdict would begin that afternoon. Defendant feared the outcome of such a trial. Defendant refused to appear and fled.
The summary dismissal order contains a set of findings that set forth the basis for the court's ruling. The ruling determines the worth of defendant's allegations and concludes that he willfully avoided trial and voluntarily waived his rights.
Initially, the court finds that the affidavit lacks corroboration. It questions the lack of *845 evidence to support defendant's assertions. Specifically, the court notes an absence of attached airline or bus line tickets and an absence of attached statements from airline personnel.
The lack of corroborative evidence attached to the petition's face does not warrant summary dismissal. In fact, a petition that asserts facts capable of corroboration invites an evidentiary hearing.
Defendant's petition does not have to establish the validity of his claim. To merit an evidentiary hearing, a petition must make a substantial showing of a constitutional violation. People v. Howard, 94 Ill.App.3d 797, 800-01, 50 Ill.Dec. 594, 597, 419 N.E.2d 702, 705 (1981). A petition's showing is tested on the assumption that the facts asserted are true. Where the matter asserted establishes a constitutional violation, a hearing must be conducted to determine the actual facts. People v. Wren, 223 Ill.App.3d 722, 728, 166 Ill.Dec. 194, 198, 585 N.E.2d 1216, 1220 (1992); People v. Dillard, 204 Ill.App.3d 7, 9, 149 Ill.Dec. 523, 524, 561 N.E.2d 1219, 1220 (1990).
The trial court further finds that the facts alleged do not show a reasonable effort to attend trial. The court questions defendant's refusal to appear in court after his arrival in the Metropolis area. It notes that this failure to appear, unrelated to any breakdown in travel plans, cost defendant the opportunity to testify. Finally, it implies that defendant's conscious refusal to attend trial after his arrival negated any earlier efforts to appear.
Defendant's alleged breakdown in travel plans frames the question of waiver. These allegations are totally discounted. The trial court finds "no indication of reasonable efforts to attend trial."
The first question that the court's finding raises is whether a breakdown in travel plans can ever constitute justification for missing a scheduled trial date.
The State submits authority that suggests that transportation is a circumstance within defendant's control and that a breakdown in transportation is defendant's fault. The authority cited reviews the results of section 115-4.1(e) motions. Presumably, hearings were held before requests to vacate trial-in-absentia convictions were denied. In each instance, the failed transportation claim tests the factfinder's credulity. In each instance, statutory criteria under section 115-4.1(e) are applied, and the transportation problems are held to be defendant's fault and due to circumstances of his own making.
Thus, this court dispels a claim based on a promised ride that did not pan out (People v. Wheeler, 186 Ill.App.3d 422, 134 Ill.Dec. 345, 542 N.E.2d 524 (1989)), a claim based on failed hitchhiking efforts (People v. Houston, 174 Ill.App.3d 584, 124 Ill.Dec. 472, 529 N.E.2d 292 (1988)), and a claim based on the high price of a bus ticket (People v. Canal, 210 Ill.App.3d 733, 155 Ill.Dec. 233, 569 N.E.2d 233 (1991)).
There is sound reason to harbor mistrust of failed transportation claims. They are a common excuse tendered in effort to defeat otherwise valid trials in absentia. They are easily tendered as pretextual masks for willful avoidance of trial. We cannot countenance a failure to appear which is blamed on promised or prayed-for rides. Nor can we countenance the high price of bus tickets as a reason for defendant's absence. Ready acceptance of such claims would render pointless virtually every trial in absentia. Acceptance of such claims would effectively empower bailed defendants to prevent prosecution.
This does not mean that a breakdown in travel plans can never justify a failure to appear. We reject the notion that defendant's duty to arrange transportation prohibits a claim based on transportation's failure. Some travel plans can go awry without defendant's fault and due to circumstances beyond his control.
The allegations in this case do not cast blame on an unreliable friend, an empty pocketbook, or an uncharitable driving public. Defendant's claimed misadventures flow from an asserted act of God in the skies over Phoenix, Arizona.
Assuming the truth of defendant's assertions, his travel plans appear reasonably calculated to assure his appearance at trial. His plans rely on common carriers that operate *846 on a time schedule. The schedule relied upon would have enabled timely arrival for trial. The travel plans are consistent with a desire to attend trial.
Defendant claims to have paid airfare for a flight scheduled to arrive in St. Louis the day before trial. He claims to have boarded that flight, intent on trial attendance. Had the flight gone as scheduled, he may well have arrived in time to appear for trial. The flight's delay was a circumstance beyond his control. If defendant was truly grounded in Phoenix, he did the only thing that he reasonably could do. He contacted his lawyer, told her that he was in transit, and advised her of the unavoidable delay.
As previously noted, contrary to claims raised in other cases, defendant's claim is seemingly capable of independent corroboration. Records should exist to confirm his frustrated efforts. Therefore, if defendant can prove his allegations, his efforts to attend trial were reasonable. His initial absence from trial was without his fault and due to factors beyond his control. However, his allegations only account for the first two days of trial.
The summary dismissal is based, in part, on defendant's willful avoidance of trial after his arrival in the area. The court notes that trial was in progress. It points out that had defendant appeared, he could have offered testimony. Defendant's conscious refusal to attend trial, when able to do so, punctuates the court's decision. It evidences a conscious surrender of rights associated with trial presence.
We must next determine whether defendant's conscious refusal to appear for the final stages of trial negates any earlier efforts to attend trial. If defendant's admitted misconduct validates his trial in absentia, any mistake in the original decision to proceed without him is meaningless. The mistake can stand uncorrected. A hearing need not be held.
Defendant's decision to flee is indefensible. He should have reported to the Metropolis courthouse upon arrival in the area. By noon, he was admittedly on notice that his appearance was necessary. Shortly thereafter, he was on notice that his trial was in progress. He blames his decision on anxiety over news that the trial was over, his witnesses went unheard, and the jury was about to deliberate. No doubt, such news could evoke fear and panic. But fear and panic do not justify the breach of defendant's legal obligation. Defendant offers nothing to justify his violation of Illinois law.
We do not condone defendant's flight. We think it is a legitimate factor to be weighed at any hearing on his claim. Timely appearance upon arrival in the area would have tempered defendant's claim of misfortune. His flight weakens it.
Defendant's flight does not, however, validate trial in absentia. Defendant's conduct does not cure the constitutional harm inflicted if defendant missed the start of trial due to circumstances alleged in his petition.
The summary dismissal suggests that defendant's appearance could have alleviated any harm inflicted by earlier proceedings. This suggestion is misplaced. An opportunity to testify could not remedy those rights already lost. If defendant unavoidably missed all but the last stage of trial, the only adequate remedy was a new trial.
Trial in absentia commits to a course entirely dependent upon the assumption that defendant has voluntarily surrendered rights associated with trial presence. Because the decision to proceed in absentia must be made at a time when the reasons for defendant's absence are unclear, trial in absentia harbors an inherent risk that its foundation in waiver may subsequently prove invalid. If a defendant unavoidably misses the bulk of his trial, if his absence proves blameless and due to events beyond his control, the trial stands for naught. The defendant must receive a new trial. 725 ILCS 5/115-4.1(e) (West 1992).
The decision to discard defendant's constitutional rights was reached when his motion to continue was denied and the State's request to proceed was granted. Thereafter, defendant lost the right to assist in the selection of his jurors. With the completion of each witness's testimony, defendant's right of confrontation gradually evaporated. By the *847 time defendant was able to appear, the trial was beyond repair. Most of the rights enjoyed by other defendants were already bypassed.
Defendant's conscious decision to flee is not without adverse legal consequence. It does not, however, rectify an otherwise faulty decision to commence trial without him. It cannot justify or remedy an unwilling loss of constitutional rights that occurred without his fault and due to circumstances beyond his control. Liberty's promise is not that strained.
For the foregoing reasons, we reverse the summary dismissal of defendant's postconviction petition. We remand for further proceedings consistent with this opinion.
Reversed and remanded.
MAAG and GOLDENHERSH, JJ., concur.