NO. 5-97-0228

November 16, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee,          ) Circuit Court of

          v. ) Macon County

JAMES A. BEARD,    ) No. 93CF266

          Defendant-Appellant. ) 

              ) Honorable

                    )    Jerry L. Patton,

                               )    Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE GARMAN delivered the opinion of the court: 

Defendant James A. Beard was convicted of first degree murder and concealment of a homicidal death following a jury trial in the circuit court of Macon County.  He was sentenced to a term of natural life in prison.  This court affirmed the conviction and sentence (
People v. Beard
, 273 Ill. App. 3d 135, 652 N.E.2d 465 (1995)), and the supreme court declined to hear his appeal (
People v. Beard
, 164 Ill. 2d 568, 660 N.E.2d 1273 (1995)).  On April 17, 1996, defendant filed a 
pro
 
se
 petition pursuant to the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 
et
 
seq
. (West 1996)), which was dismissed by the circuit court on May 13, 1996, as frivolous and patently without merit.  Defendant now appeals the denial of his postconviction petition without an evidentiary hearing, arguing that he has made a substantial showing that he was deprived of his constitutional rights.  Specifically, he argues that the State knowingly used perjured testimony by his former cellmate and that he was denied a fair trial because one juror gave untruthful answers during 
voir
 
dire
.  We affirm in part and reverse in part and remand with directions.

"A proceeding brought under the Post-

Conviction [Hearing] Act is a collateral attack on a judgment of conviction.  The inquiry in a post-conviction petition is limited to allega­tions of constitutional violations that were not and could not have been raised previously.  [Citation.]  The petitioner is entitled to an evidentiary hearing only upon making a sub­stantial showing that he suffered a substan­tial deprivation of constitutional rights.  [Citation.]  In making that determination, all well-pleaded facts in the petition and any accompanying affidavits are taken as true.  [Citation.]  The determi­

nations of the trial court, however, will not be disturbed absent manifest error."  
People v. Steidl
, 177 Ill. 2d 239, 249, 685 N.E.2d 1335, 1339-40 (1997). 

ALLEGED USE OF PERJURED TESTIMONY BY THE STATE

In his petition, defendant stated that his constitutional rights were violated because the jury was not informed of the "deal" between the State and a "key witness[],"  Anthony Robinson.  The trial court, defense counsel, and the State are, according to defendant's petition, all responsible for this alleged violation.  Specifically, he claims that Robinson received a sentence of probation for a pending burglary charge in return for his testimony against defendant and that Robinson lied under oath about this bargain.  He argues that Robinson was not eligible for probation because of his prior burglary convictions and that this is sufficient evidence of a "deal" between Robinson and the prosecutor to create the gist of a constitutional claim.  

The trial transcript reveals that, at the time he testified, Robinson was an inmate in the Macon County jail.  He testified that he met defendant during a previous incarceration and they had several conversations, during which the defendant made several incriminating statements.  On direct examination, Robinson stated that he did not expect to receive anything from the State in return for his testimo­ny.  

On cross-examination, Robinson testified that after learning a subpoena had been issued for him but delivered to his brother, he called the State's Attorney's office and told them he did not want to testify.  He made an appointment to talk to the prosecutor on September 13, 1993, but did not keep the appointment.  That night he was arrested for burglary.  He denied that he was testifying in this case only because of the charges pending against him.  He admitted he had two prior felony convictions.  According to Robinson, he felt a duty to testify against defendant for two reasons:  his mother told him the victim was a grandmother and he recalled that, when his sister was killed, someone testified against her accused killer.

In its order of dismissal, the circuit court made two findings of fact relevant to this claim.  However, the circuit court's comments addressed only one aspect of defendant's claim--

that his own attorneys "failed to have the State inform the jury of the deal they had made with its key witnesses."  However, because defendant made this argument in his petition, but has abandoned it in his brief, we need not consider the issue.  In any event, the circuit court correctly concluded that defense counsel's cross-

examination of Robinson explored the possibility that he was testifying in return for favorable consideration on his pending criminal charge.  If Robinson's testimony was untruthful, the fault does not lie with defense counsel.

We next turn to defendant's assertion that the State made knowing use of perjured testimony at his trial by failing "to inform the jury of the deal it had made" with the witness.  The order of the circuit court dismissing defendant's petition does not specifically address this aspect of defendant's argument.  

Before we address the merits of defendant's claim, we must address the State's argument that defendant has waived this issue on appeal because it is not the same issue raised in his petition.   The State quotes the language of the Act ("[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived" (725 ILCS 5/122-3 (West 1996))) and cites the decision of this court in 
People v. Davison
, 292 Ill. App. 3d 981, 686 N.E.2d 1231 (1997), in support of its waiver argument.  In 
Davison
, defendant contended for the first time on appeal that the information by which he was charged was deficient.  Because he failed to raise this issue in his petition, we found it waived.  
Davison
, 292 Ill. App. 3d at 987, 686 N.E.2d at 1235.

Defendant acknowledges that his petition did not specifically allege that the State's use of perjured testimony was knowing, but argues, as a 
pro
 
se
 petitioner, that this court should afford him some leeway, citing our decision in 
People v. Dredge
, 148 Ill. App. 3d 911, 500 N.E.2d 445 (1986).  In 
Dredge
, we concluded: 

"[I]n order to withstand dismissal at the first stage of post-conviction proceedings, a peti­tion for post-conviction relief need only contain a simple statement which presents the gist of a claim for relief which is meritori­

ous when considered in view of the record of the trial court proceedings.  [Citation.]  Requiring 
pro
 
se
 petitioners to state their claims in greater detail than this would have the practical effect of depriving many such persons of their right of meaningful access to the courts."  
Dredge
, 148 Ill. App. 3d at 913, 500 N.E.2d at 446-47.

In this case, the defendant alleged in his petition that Robinson lied under oath and the State did not inform the jury that Robinson "would receive probation" in return for his testimo­ny.  The import of this claim is clear--that the State made a deal with Robinson prior to his testifying and did not make any effort to correct his false testimony at trial.  Defendant's failure to employ the precise term "knowing" in his petition does not constitute waiver.  As we noted in 
Dredge
, if a petition is not dismissed as frivolous or patently without merit, it moves to the second state of the adjudication process where counsel must be afforded the opportunity to amend the petition.  
Dredge
, 148 Ill. App. 3d at 912, 500 N.E.2d at 446.  Thus, any lack of precision in the formulation of this issue may be corrected by amendment should the matter be remanded.

"The knowing use of perjured testimony is a violation of a defendant's due process rights.  [Citation.]  This is true even when the testimony does not relate to a material issue, but rather goes to the credibility of the witness.  [Citation.]  If a prosecutor knowingly permits false testimony to be used, the defendant is entitled to a new trial."  
Steidl
, 177 Ill. 2d at 261-62, 685 N.E.2d at 1345.

In 
Steidl
, a prosecution witness testified at trial that she did not expect a reward.  After testifying, however, she received $2,500 in relocation money from the State.  The supreme court concluded that if the witness knew at the time of testifying that she was to receive compensation and she did not testify truthfully, "defendant's due process rights were violated, regardless of whether such information could be construed against defendant."  
Steidl
, 177 Ill. 2d at 262, 685 N.E.2d at 1345.  Accordingly, the supreme court found that the circuit court erred in not holding an evidentiary hearing at which evidence could be adduced as to whether the witness expected to receive compensation from the State.  

Defendant argues that Robinson did expect favorable treatment in return for his testimony; he lied about this under oath; and the State was aware of the false testimony and failed to correct it.  Defendant further asserts that, after testifying, Robinson received a sentence of probation when, because of his previous felony convictions, he was not eligible for probation.  The transcript supports defendant's assertions that Robinson was facing a burglary charge at the time he testified and that he had previously been convicted of two felonies.  A document, purported to be Robinson's Macon County arrest record, is also in the supple­

men­tal record.  Defendant's brief also cites to the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(2)(F) (West 1992)) to argue that, given his prior record, Robinson was not eligible for probation.

 A defendant is not entitled to an evidentiary hearing on his postconviction claim unless the claim is supported by "affida­

vits, records, or other evidence containing specific facts."  
People v. Smith
, 268 Ill. App. 3d 574, 578, 645 N.E.2d 313, 317 (1994).  On the other hand, "A petition's showing is tested on the assumption that the facts asserted are true."  
People v. Manikowski
, 288 Ill. App. 3d 157, 163, 679 N.E.2d 840, 845 (1997).   Whether Robinson, in fact, received a sentence of probation is a matter outside the common law record.  The State argues that this claim is not supported by evidence of Robinson's subsequent conviction and sentencing on the burglary charge and, therefore, the petition was properly dismissed.  In general, a hearing on a postconviction petition is appropriate "where resolution of the issues requires an inquiry into matters outside of the common law record."  
Smith
, 268 Ill. App. 3d at 578, 645 N.E.2d at 317.  The lack of corroborative evidence regarding the disposi­tion of the burglary charge against Robinson does not warrant summary dismissal.  
Manikowski
, 288 Ill. App. 3d at 163, 679 N.E.2d at 845.  "In fact, a petition that asserts facts capable of corroboration invites an evidentiary hearing."  
Manikowski
, 288 Ill. App. 3d at 163, 679 N.E.2d at 845.

 The State further argues that a hearing is not required because, if Robinson committed perjury, the prosecutor was not aware of his untruthfulness.  The supreme court, however, has rejected this argument:

"In order to establish a violation of due process, the prosecutor actually trying the case need not have known that the testimony was false; rather, knowledge on the part of any representative or agent of the prosecution is enough."  
People v. Olinger
, 176 Ill. 2d 326, 348, 680 N.E.2d 321, 332 (1997).

Finally, the State argues that defendant is seeking the wrong remedy because the proper remedy for the State's unknowing use of perjured testimony is a petition for postjudgment relief (735 ILCS 5/2-1401 (West 1996)).  
People v. Brown
, 169 Ill. 2d 94, 107-08, 660 N.E.2d 964, 970 (1995).  This argument, however, fails to address the questions that must be answered at an evidentiary hearing--did Robinson commit perjury and did the State knowingly allow such false testimony to go uncorrected?

The evidence against defendant, consisting primarily of the testimony of his wife, who was also charged in connection with the homicide, was not so over­whelm­ing that the corroborating testimony of Robinson was insignif­icant.  Robinson's credibility as a witness was therefore an important issue.

"[E]vidence of any understanding or agreement as to [the witness'] prosecution would be rele­vant to his credibility and the jury was entitled to know it.  A new trial is required if the false testimony could in any reasonable like­lihood have affected the judgment of the jury."  
People v. Bolton
, 10 Ill. App. 3d 902, 908, 295 N.E.2d 11, 16 (1973).

We, therefore, hold that defendant has raised the gist of a constitutional claim on this issue.  

ALLEGED PERJURY BY JUROR

Defendant's 
pro
 
se
 petition alleged that his constitu­

tional rights were violated when his attorneys allowed a biased juror, K.S., to sit on the jury because (1) K.S. was the victim of a sex crime when she was young and (2) she was active in groups that oppose pornography in the community.  In addition to alleging that his attorneys should have questioned K.S. more thoroughly, the petition states that she "should have stated her beliefs and adversions [
sic
]" and, if she had done so, she would have been excused for cause.  Her "bias and prejudice," defendant asserts, deprived him of a fair trial. 

Accompanying the petition were several unmarked exhibits, including a November 8, 1995, newspaper article on the closing of an adult bookstore in Decatur.  The article does not mention K.S. by name.  A second newspaper article, with the date November 1, 1994, handwritten in the margin, describes her remarks to a group of antipornography activists at a "Pornography Awareness Week" gathering in which she described her jury service on the Beard case.  In those remarks, she identified herself as a member of the "Cookie Patrol," an organization mentioned in the later article as having held antipornography demonstrations at the adult bookstore.  In neither article does K.S. describe herself as someone who has been a victim of a sex crime.  Also accompa­nying the petition were photocopies of the April and August 1993 issues of the Journal of the American Family Associa­tion (JAFA), purport­edly addressed to "M/M George [S.]"

In finding defendant's petition "frivolous" and "patently without merit," the circuit court made the following finding of fact with regard to defendant's claim of juror bias:  

"The defendant's allegations regarding the juror [K.S.] are just that[--]allega­

tions--he has not submitted any affidavits or exhib­its which would show [K.S.] was preju­

diced against the defendant at the time she served on the jury panel."

The order also states, in conclusion, that "the Defendant's Post[-]Conviction Petition and 
exhibits and attachments
 do not show any violation of his Constitutional Rights."  (Emphasis added.)

Defendant's argument contains two parts.  First, he argues that reversal is necessary because the circuit court failed to consider his exhibits.  Second, he argues that he has presented the gist of a meritorious claim.

With regard to the exhibits, defendant claims that his exhibits "were apparently not forwarded by the circuit clerk to the circuit court *** as the circuit court indicated in its dismissal order that [defendant] had not included any supporting material."  As the State correctly points out, the circuit court did not say that the petition was not accompanied by 
any
 affidavits or exhibits.  Rather, the circuit court said that there was no material supporting defendant's claim that K.S. was biased against

defendant 
at the time she served on the jury
.  Defendant's assumption that the circuit court did not view these materials is completely unfounded.  We next turn to the question of whether his claim that K.S. lied during 
voir
 
dire
 entitles him to a hearing.

The State claims waiver, asserting that defendant has forfeited this issue by failing to raise it in his petition.  However, implicit in the assertion in the petition that K.S. should have stated her beliefs during 
voir
 
dire
 is the accusation that she was not completely truthful in her responses.  We, therefore, decline to find waiver.

Defendant urges this court to review this matter 
de
 
novo
.  The State points out that as recently as 1997, the supreme court has applied an abuse of discretion standard to the dismissal of a postconviction petition without an evidentiary hearing.  See 
People v. Madej
, 177 Ill. 2d 116, 127, 685 N.E.2d 908, 914 (1997). In 
People v. Coleman
, No. 81441, slip op. at 17 (October 1, 1998), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___, the supreme court announced that the standard of review to be applied in such cases in the future and to all cases pending as of October 1, 1998, is 
de
 
novo
:

"The question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act.  Due to the elimination of all factual issues at the dismissal stage of a post-conviction proceeding, the question is, essentially, a legal one, which requires the reviewing court to make its own independent assessment of the allegations." 

On 
voir
 
dire
, K.S. testified that she was married and a homemaker.  She did not know any of the defense attorneys or prosecutors.  She knew no one in the State's Attorney's office.  She said that she had read or heard something about the case but, when asked if this would prevent her from being a fair and impartial juror, she replied: 

"[A.]  It's a heinous crime, and that bothers me.  I would certainly try to be fair, but it does bother me. 

* * * 

THE COURT:  Now, basically, the ques­tion I would like to ask you is if you heard some­

thing or read something, could you set that aside and decide this case only upon the evidence presented in open court and then the law which the Court would give you at the end of the case?

[A.]  Yes, I have been able to put emo­

tions aside in previous cases I have been on and consider the evidence.

THE COURT:  Do you feel that you could do that in this case, ma'am?

[A.]  I certainly would try my best."  

Later, the trial court asked the panel if any member had "any religious or moral beliefs that would prevent you from serving as a juror" in a felony criminal case.  K.S. answered, "No."

Defendant argues that this statement by K.S. was false at the time she made it because she "belonged to an organization that crusaded against sex crimes."  Citing 
People v. Potts
, 224 Ill. App. 3d 938, 946, 586 N.E.2d 1376, 1382-83 (1992), defendant states that a juror's failure to reveal potentially prejudicial informa­

tion or giving false testimony during 
voir
 
dire
 can violate a defendant's right to a fair trial.  He compares her responses to those of the juror in 
Potts
, who was asked on 
voir
 
dire
 if a member of her family had ever been the victim of a crime.  She did not reveal that her daughter had been murdered.  She was asked if she knew anyone on the list of potential witnesses.  She did not reveal that she knew two defense witnesses.  
Potts
, 224 Ill. App. 3d at 946-47, 586 N.E.2d at 1382.  These outright lies, the 
Potts
 court conclud­ed, rose "to the level of actual prejudice to defendant's right to a trial by a fair and impartial jury."  
Potts
, 224 Ill. App. 3d at 947, 586 N.E.2d at 1382-83.  

Our analysis of this issue is guided by the decision of the supreme court in 
Olinger
, 176 Ill. 2d at 353, 680 N.E.2d at 335, which sets out a two-part standard to be applied in determin­

ing whether a defendant is entitled to a new trial due to false statements made by a juror during 
voir
 
dire
.  The defendant must establish that "(1) a juror answered falsely on 
voir
 
dire
 and (2) prejudice resulted therefrom."  
Olinger
, 176 Ill. 2d at 353, 680 N.E.2d at 335.  

In 
Olinger
, which is factually more similar than 
Potts
 to the present case, the defendant's postconviction petition alleged that a juror had written a letter to a local newspaper several years after defendant's conviction stating her view that the law should be changed so that a criminal defendant would be presumed guilty until he proved his innocence.  
Olinger
, 176 Ill. 2d at 341, 680 N.E.2d at 329.  The circuit court allowed a discovery deposi­

tion of the juror, ruled on the basis of her deposition testimony that she had she followed her oath as juror, and dismissed the defendant's claim.  
Olinger
, 176 Ill. 2d at 341, 680 N.E.2d at 329.  On appeal, the court concluded that dismissal was proper because the juror's views as expressed in the letter did not demonstrate any falsity in her 
voir
 
dire
 testimony:

"Notably, the juror never asserts [in her letter] that she applied her viewpoints in defendant's case.  Nor does she state that she did not understand the presumption of inno­

cence, that she did not require the State to prove defendant guilty beyond a reasonable doubt or that she was not able to render a fair and impartial verdict.  Consequently, defendant has failed to demonstrate that the juror lied during her 
voir
 
dire
 examination."  
Olinger
, 176 Ill. 2d at 354-55, 680 N.E.2d at 335. 

In this case, the exhibits offered by defendant show that sometime after her jury service, K.S. actively campaigned to limit the presence of pornography in her community.  They show that at the time she served as a juror, her household received a publica­

tion from an organization describing itself as "a Christian organization promoting the Biblical ethic of decency in American society with primary emphasis on [television] and other media."  Using these facts, defendant attempts to paint K.S. as a person whose religious beliefs are so extreme as to make her incapable of impartially judging his guilt of the crime of murder because there was testimony that he and his wife were in the habit of picking up strangers in bars, bringing them to their home to watch pornogra­

phy, and having sex with them, and that the victim was killed when she resisted their sexual advances.  We agree with the trial court that defendant's claim is frivolous and entirely without merit.

We note that the trial court in 
Olinger
 permitted a discovery deposition of the challenged juror "to determine whether, at the time of defendant's trial, she followed her oath as a juror" (
Olinger
, 176 Ill. 2d at 355, 680 N.E.2d at 335) and that the court found the results of the deposition supported the denial of defendant's claim.  No such deposition was taken in this case.  However, in 
Olinger
, the petition, in addition to the juror's letter to the newspaper, contained an affidavit allegedly signed by the juror stating she held the beliefs stated in her letter at the time of trial.  
Olinger
, 176 Ill. 2d at 353, 680 N.E.2d at 335.  At her deposition, the juror testified that she was not familiar with the affidavit and did not sign it.  
Olinger
, 176 Ill. 2d at 355, 680 N.E.2d at 336.  There was no reason for the trial court in this case to subject K.S. to the inconvenience of a discovery deposi­

tion.  

The defendant has not demonstrated that the trial court erred by dismissing his claim of juror bias. 

CONCLUSION

The judgment of the trial court dismissing defendant's petition for postconviction relief is reversed as to the alleged use of perjured testimony and affirmed as to the alleged perjury by a juror.  The matter is hereby remanded to the trial court for further proceed­ings in accordance with the views expressed herein.

Affirmed in part and reversed in part; cause remanded with direc­tions.

COOK and STEIGMANN, JJ., concur.