29 August 2000

NO. 4-99-0685

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

GERALD L. PATTON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Douglas County

No. 98CF34

Honorable

Frank W. Lincoln,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

Following a stipulated bench trial in July 1998, the trial court convicted defendant, Gerald L. Patton, of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 1998)) and sentenced him to 20 years in prison.  Defendant did not file a direct appeal.  In June 1999, defendant filed a 
pro
 
se
 post­

conviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1
 through 122-8 (West 1998)), and in July 1999, the court dismissed that petition as frivolous and patently without merit, pursuant to section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 1998)).

Defendant appeals, arguing that the trial court erred by dismissing his 
pro
 
se
 post­conviction petition because it contains factual allegations sufficient to state the "gist" of valid constitutional claims.  We reverse and remand for further proceedings.

I. BACKGROUND

In April 1998, defendant, then 53 years old, was charged with two counts of predatory criminal sexual assault of a child for allegedly committing acts of digital-vaginal penetra

tion on two girls under the age of 13.  

As defendant's July 1998 trial was about to begin, defense counsel informed the trial court that defendant would be entering a negotiated guilty plea to the State's second count.  The court then admonished defendant, along with all of the other defendants present in the courtroom on unrelated cases, regarding their right to a jury trial and the rights they waive by entering a guilty plea.  

When the trial court turned its attention back to defendant's case, the State's Attorney again informed the court that defendant would be entering a negotiated guilty plea.  The court asked the State's Attorney for the terms of the agreement, and she explained as follows:  

"Your Honor, for a plea of guilty to [c]ount [II], a sentence of 20 years to the Department of Corrections.  People will dismiss [c]ount [I], and there has been discovery in this case alleging other victims and we would not be pursuing any of those victims that were disclosed in discovery."

After the trial court and counsel addressed matters not relevant to this appeal, the State's Attorney briefly stated the factual basis for the guilty plea by summarizing the testimony that the State's witnesses would have provided at trial.  The following colloquy then occurred:

"THE COURT:  [Defendant], did you hear the State's Attorney's explanation of the factual basis to your plea?

DEFENDANT:  Yes.

THE COURT:  And is what she said sub

stantially true and correct?

MR. BROCH [(Defense counsel)]:  Your Honor, we would agree that the State's wit

nesses would testify substantially, and indi

cate there would be a factual basis, and there would be an issue for the jury.

We would also agree, Your Honor---that I've had discussions with [defendant], and he feels it is in his best interest, due to the evidence that would be presented against him in this case, and also any evidence presented with regard to further allegations and fur

ther investigations, that he enter a plea of guilty.

THE COURT:  Okay, but this is a guilty plea, and it's not a prudent plea?  [Appar

ently, by a 'prudent plea,' the court meant a stipulated bench trial at which defendant would not be contesting the sufficiency of the State's evidence to convict him.]

MR. BROCH:  This is a prudent plea, Your Honor.

THE COURT:  Well, then we have to handle a prudent plea differently.  You have to have the admonitions.  Okay, I think I'm going to pass this for the moment.  I'm not saying I'm rejecting your plea.  I'm going to pass it and we will come back to it, and handle it in a little different fashion."

One-half hour later, defendant's case was again before the trial court.  The following dialogue took place: 

"THE COURT:  Is there any sentencing cap here, Ms. Sipich (State's Attorney)? 

MS. SIPICH:  Yes.  The People are going to be recommending 20 years in the Department of Corrections.

THE COURT:  And any sentence imposed by the [c]ourt, in the event of a conviction, would not exceed that then, is that correct?

MS. SIPICH:  Yes, Your Honor.

THE COURT:  Is that right, Mr. Broch?

MR. BROCH:  Yes it is, Judge."

The trial court then asked defendant a series of questions and concluded that defendant knowingly and voluntarily waived his right to a jury trial.  The State presented the stipulated evidence; the court found defendant guilty and immedi

ately turned to sentencing.  The discussion regarding defendant's sentence follows:

"THE COURT:  Now, as I understand it, counsel, then it was your agreement that there would be a negotiated sentence, in the event of a finding [of guilty] of 20 years, is that correct?

MS. SIPICH:  That's right, Your Honor.

THE COURT:  Is there any evidence you wish to present in aggravation, Ms. Sipich?

MS. SIPICH:  No, Your Honor.

THE COURT:  Anything in mitigation, Mr. Broch?

MR. BROCH:  No, Your Honor.

THE COURT:  Based upon your negotiated disposition, in the event of a finding, do either of you wish a [presentence] [r]eport?

MS. SIPICH:  No, your Honor.

MR. BROCH:  No, your Honor."

The trial court then sentenced defendant as stated.  After doing so, the court advised defendant of his right to appeal.  In part, the court advised defendant as though he had entered a guilty plea.

Defendant did not file a direct appeal.  In June 1999, defendant filed the present 
pro
 
se
 post­conviction petition.  The trial court dismissed that petition as frivolous and patently without merit, and this appeal followed. 

II. ANALYSIS

A. Proceedings Under the Act

The Act (725 ILCS 5/122-1
 through 122-8 (West 1998)) provides a three-step process for adjudication of petitions for post­conviction relief.  At the first stage, the trial court should not decide the petition on the merits; instead, without input from the State or further pleadings from the defendant, the court should simply determine if the petition is frivolous or patently without merit.  725 ILCS 5/122-2.1 (West 1998).  If the trial court does not dismiss the petition at this first stage, in the second stage, the court will appoint counsel to represent an indigent defendant who requests counsel, and counsel will have an opportunity to amend defendant's post­conviction petition.  The State may then file a motion to dismiss, and the trial court will determine whether an evidentiary hearing on the merits of the defendant's petition is warranted.  
That evidentiary hearing is the third and final stage of post­conviction proceedings.  
People v. Frieberg
, 305 Ill. App. 3d 840, 846-47, 713 N.E.2d 210, 215 (1999).

B. Defendant's 
Pro
 
Se
 Post­conviction Petition

Defendant argues that his 
pro
 
se
 post­conviction peti

tion should not have been dismissed at the first stage of post­conviction proceedings because it is not frivolous or patently without merit.  According to defendant, when considered in conjunction with the record, his petition sufficiently alleges that he was deprived of his due process rights and the right to effective assistance of counsel.  Specifically, defendant con

tends that the trial court's admonitions and his attorney's acquiescence confused and misled him regarding the following: (1) what rights he waived and retained by submitting to a stipulated bench trial; (2) whether he consented to a sentencing cap of 20 years or an agreed-upon sentence of 20 years; and (3) the proce

dural steps that he was required to take to preserve his right to appeal.  In response, the State argues that the trial court properly dismissed defendant's 
pro
 
se
 post­conviction petition because defendant did not sufficiently allege the constitutional violations that he now articulates on appeal.  We agree with defendant.

To withstand dismissal at the first stage of post­

conviction proceedings, a 
pro
 
se
 petition for post­conviction relief need only contain a simple statement that presents the "gist of a claim for relief" when nothing in the trial record contradicts that claim.  
People v. Hernandez
, 283 Ill. App. 3d 312, 316, 669 N.E.2d 1326, 1329 (1996).  To state the "gist of a claim," the 
pro
 
se
 petitioner need not construct legal arguments nor even understand what legal arguments the facts presented in the petition might support.  At the first stage, the trial court should determine whether the petition contains sufficient facts upon which a meritorious constitutional claim 
could
 
be
 based.  Trial courts are encouraged to closely scrutinize supporting documents, including the record, at this stage of the process.  
People v. Lemons
, 242 Ill. App. 3d 941, 946-47, 613 N.E.2d 1234, 1238 (1993).  We review 
de
 
novo
 a first-stage dismissal of a 
pro
 
se
 post­conviction petition.  
People v. Coleman
, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998) (referring to review as plenary).

In his 
pro
 
se
 post­conviction petition, defendant alleges, albeit inartfully, that he was denied effective assis

tance of counsel because, prior to sentencing, his lawyer failed to (1) discuss matters related to sentencing with him, (2) seek mitigating evidence, and (3) request a presentence investigation report.  In its order dismissing defendant's post­conviction petition, the trial court concluded that this portion of defen

dant's claim was patently without merit because defendant had negotiated an agreed sentence and "got what he bargained for."

The record belies the trial court's characterization of what took place during defendant's plea proceedings.  Instead, it evinces a series of miscommunications between the court, defense counsel, and the State's Attorney.  At one point in the proceed

ings, the court, defense counsel, and the State's Attorney appear to agree that the parties had agreed to a sentencing cap.  Later, the court, defense counsel, and the State's Attorney appear to agree that the parties had agreed to a sentence of 20 years.  No one ever attempted to clarify the parties' sentencing agreement for the record by explaining, for example, that at one point or the other, the court or one of the parties misspoke.  

The differences between a sentencing cap and an agreed-

upon sentence are significant.  If a sentence has been agreed upon, then when a defendant pleads guilty, all the trial court need do is hear representations and make a finding as to the defendant's record of delinquency or criminality (see 730 ILCS 5/5-3-1 (West 1998)) and impose the agreed-upon sentence.  On the other hand, if the parties have agreed only to a sentencing cap, then when the defendant pleads guilty, section 5-3-1 of the Unified Code of Corrections 
mandates
 the court to order a presentence investigation conducted and a presentence report prepared for use at a sentencing hearing to be held on some future date (730 ILCS 5/5-3-1 (West 1998)).  Further, the parties are each permitted to present their respective evidence in aggravation and mitigation, with the State typically arguing that the court should impose the maximum sentence permitted by the cap, while the defendant urges the court to impose something less.  Clearly, if a defendant and his counsel believe the plea agreement has the defense agreeing to a specific sentence and not merely a cap, then no effort will be made to present either evidence or argument as to why some sentence less than the sentencing cap should be imposed.  

Although defendant failed to articulate a coherent legal argument incorporating these facts, we are satisfied that he stated the gist of a constitutional claim that was not contra

dicted by the record.  

The entering of a guilty plea (or submission to a stipulated bench trial) is a serious event--particularly when doing so results in a 20-year prison sentence.  With so much at stake, the parties and the trial court ought to ensure that they all understand exactly what they are doing and what the terms of the plea agreement are.  Even after careful scrutiny, this record  remains unclear as to (1) whether defendant entered a negotiated plea or submitted to a stipulated bench trial (and if the latter, exactly what rights he preserved by doing so), and (2) the terms defendant agreed to regarding his sentence.  All of this uncer

tainty could have been avoided had the court demanded--or the attorneys provided--clarity. 

Because defendant's 
pro
 
se
 post­conviction petition stated the gist of a claim for relief, we reverse the trial court's stage-one dismissal of his petition.  In doing so, we express no opinion regarding the merits of defendant's petition when subjected to further scrutiny (or evidence) at subsequent proceedings.  For the reasons that follow, we decline to address the merits of defendant's other claims for relief.

C. The State's Request That We Enter Separate Rulings 

on Defendant's Various Claims for Post­conviction Relief

Citing 
People v. Beard
, 301 Ill. App. 3d 279, 703 N.E.2d 552 (1998), the State requests that we enter separate rulings on each of defendant's claims, reversing the trial court as to those claims we deem meritorious and affirming the dis

missal of those we do not.  
In 
Beard
, this court reviewed a trial court's dismissal of a 
pro
 
se
 post­conviction petition at stage one.  We concluded that one of the defendant's claims was prop

erly dismissed but that the defendant had raised the gist of a constitutional claim in another.  Accordingly, we reversed in part and affirmed in part.  
Beard
, 301 Ill. App. 3d at 289, 703 N.E.2d at 559.  For the following reasons, we decline to do in this case what we did in 
Beard
. 

In 
Beard
, the issue the State now raises--namely, whether section 122-2.1 of the Act allows for the parsing of claims--was not presented to, or analyzed by, this court.  Prompted by the State in this case, we have considered the issue and now conclude that section 122-2.1 of the Act does not allow for partial dismissals of 
pro
 
se
 post­conviction petitions at stage one.

Section 122-2.1 of the Act directs the trial court to dismiss a post­conviction petition if it determines that the petition is frivolous or patently without merit.  725 ILCS 5/122-

2.1(a)(2) (West 1998).  As written, it is, in essence, an all-or-

nothing statute.  That is to say, if the petition is in all respects frivolous or patently without merit, it should be dismissed.  On the other hand, if the court determines that the petition presents 
any
 claim that is not frivolous or patently without merit, then the court should "order the petition to be docketed for further consideration" under the Act, as provided in section 122-2.1(b) of the Act (725 ILCS 5/122-2.1(b) (West 1998)).  We conclude that the language of section 122-2.1 of the Act does not allow for the partial dismissal of a defendant's 
pro
 
se
 petition for post­conviction relief.  

The Third District Appellate Court reached a similar conclusion in 
People v. Noel
, 291 Ill. App. 3d 541, 684 N.E.2d 414 (1997), in which the trial court had dismissed one portion of the defendant's 
pro
 
se
 post­conviction petition under section 122-

2.1 of the Act and allowed another portion to proceed to stage two.  The appellate court wrote the following: 

"The Post-Conviction Hearing Act does not authorize 
partial
 dismissals of post­

conviction petitions as frivolous or patently without merit.  If some part of the petition is not frivolous, the trial court should appoint counsel, who can appropriately amend the petition.  Allowing partial dismissal raises serious questions about the judicial review process, since first stage dismissals are final and appealable judgments.  In the interest of judicial economy, and to avoid piecemeal litigation, trial judges should refrain from entering partial summary dis

missals."  (Emphasis in original.) 
Noel
, 291 Ill. App. 3d at 544, 684 N.E.2d at 416.

We agree with the Third District Appellate Court.  Whether we focus on the language of section 122-2.1 of the Act or on perti

nent matters of public policy and judicial administration, we reach the same result:  the legislature did not intend to autho

rize partial dismissals of 
pro
 
se
 post­conviction petitions when it enacted section 122-2.1 of the Act.  As to the portion of our decision in 
Beard
 that holds otherwise, we decline to follow it further.  

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

MYERSCOUGH and KNECHT, JJ., concur.