THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD L. PATTON, Defendant-Appellant.

Fourth District   No. 4—99—0685

Opinion filed August 29, 2000.

Daniel D. Yuhas and Duane E. Schuster, both of State Appellate Defender's Office, of Springfield, for appellant.

Diane Sipich, State's Attorney, of Tuscola (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Following a stipulated bench trial in July 1998, the trial court convicted defendant, Gerald L. Patton, of predatory criminal sexual assault (720 ILCS 5/12—14.1(a)(1) (West 1998)) and sentenced him to 20 years in prison. Defendant did not file a direct appeal. In June 1999, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 through 122—8 (West 1998)), and in July 1999, the court dismissed that petition as frivolous and patently without merit, pursuant to section 122—2.1 of the Act (725 ILCS 5/122—2.1 (West 1998)).

Defendant appeals, arguing that the trial court erred by dismissing his *pro se* postconviction petition because it contains factual allegations sufficient to state the "gist" of valid constitutional claims. We reverse and remand for further proceedings.

## I. BACKGROUND

In April 1998, defendant, then 53 years old, was charged with two counts of predatory criminal sexual assault of a child for allegedly committing acts of digital vaginal penetration on two girls under the age of 13.

As defendant's July 1998 trial was about to begin, defense counsel informed the trial court that defendant would be entering a negotiated

guilty plea to the State's second count. The court then admonished defendant, along with all of the other defendants present in the courtroom on unrelated cases, regarding their right to a jury trial and the rights they waive by entering a guilty plea.

When the trial court turned its attention back to defendant's case, the State's Attorney again informed the court that defendant would be entering a negotiated guilty plea. The court asked the State's Attorney for the terms of the agreement, and she explained as follows:

"Your Honor, for a plea of guilty to [c]ount [II], a sentence of 20 years to the Department of Corrections. People will dismiss [c]ount [I], and there has been discovery in this case alleging other victims and we would not be pursuing any of those victims that were disclosed in discovery."

After the trial court and counsel addressed matters not relevant to this appeal, the State's Attorney briefly stated the factual basis for the guilty plea by summarizing the testimony that the State's witnesses would have provided at trial. The following colloquy then occurred:

"THE COURT: [Defendant], did you hear the State's Attorney's explanation of the factual basis to your plea?

DEFENDANT: Yes.

THE COURT: And is what she said substantially true and correct?

MR. BROCH [(Defense counsel)]: Your Honor, we would agree that the State's witnesses would testify substantially, and indicate there would be a factual basis, and there would be an issue for the jury.

We would also agree, Your Honor—that I've had discussions with [defendant], and he feels it is in his best interest, due to the evidence that would be presented against him in this case, and also any evidence presented with regard to further allegations and further investigations, that he enter a plea of guilty.

THE COURT: Okay, but this is a guilty plea, and it's not a prudent plea? [Apparently, by a 'prudent plea,' the court meant a stipulated bench trial at which defendant would not be contesting the sufficiency of the State's evidence to convict him.]

MR. BROCH: This is a prudent plea, Your Honor.

THE COURT: Well, then we have to handle a prudent plea differently. You have to have the admonitions. Okay, I think I'm going to pass this for the moment. I'm not saying I'm rejecting your plea. I'm going to pass it and we will come back to it, and handle it in a little different fashion."

One-half hour later, defendant's case was again before the trial court. The following dialogue took place:

"THE COURT: Is there any sentencing cap here, Ms. Sipich (State's Attorney)?

MS. SIPICH: Yes. The People are going to be recommending 20 years in the Department of Corrections.

THE COURT: And any sentence imposed by the [c]ourt, in the event of a conviction, would not exceed that then, is that correct?

MS. SIPICH: Yes, Your Honor.

THE COURT: Is that right, Mr. Broch?

MR. BROCH: Yes it is, Judge."

The trial court then asked defendant a series of questions and concluded that defendant knowingly and voluntarily waived his right to a jury trial. The State presented the stipulated evidence; the court found defendant guilty and immediately turned to sentencing. The discussion regarding defendant's sentence follows:

"THE COURT: Now, as I understand it, counsel, then it was your agreement that there would be a negotiated sentence, in the event of a finding [of guilty] of 20 years, is that correct?

MS. SIPICH: That's right, Your Honor.

THE COURT: Is there any evidence you wish to present in aggravation, Ms. Sipich?

MS. SIPICH: No, Your Honor.

THE COURT: Anything in mitigation, Mr. Broch?

MR. BROCH: No, Your Honor.

THE COURT: Based upon your negotiated disposition, in the event of a finding, do either of you wish a [presentence] [r]eport?

MS. SIPICH: No, your Honor.

MR. BROCH: No, your Honor."

The trial court then sentenced defendant as stated. After doing so, the court advised defendant of his right to appeal. In part, the court advised defendant as though he had entered a guilty plea.

Defendant did not file a direct appeal. In June 1999, defendant filed the present *pro se* postconviction petition. The trial court dismissed that petition as frivolous and patently without merit, and this appeal followed.

## II. ANALYSIS

### A. Proceedings Under the Act

The Act (725 ILCS 5/122—1 through 122—8 (West 1998)) provides a three-step process for adjudication of petitions for postconviction relief. At the first stage, the trial court should not decide the petition on the merits; instead, without input from the State or further pleadings from the defendant, the court should simply determine if the petition is frivolous or patently without merit. 725 ILCS 5/122—2.1 (West 1998). If the trial court does not dismiss the petition at this first stage, in the second stage, the court will appoint counsel to represent an indigent defendant who requests counsel, and counsel will have an

opportunity to amend defendant's postconviction petition. The State may then file a motion to dismiss, and the trial court will determine whether an evidentiary hearing on the merits of the defendant's petition is warranted. That evidentiary hearing is the third and final stage of postconviction proceedings. *People v. Frieberg*, 305 Ill. App. 3d 840, 846-47, 713 N.E.2d 210, 215 (1999).

### B. Defendant's *Pro Se* Postconviction Petition

Defendant argues that his *pro se* postconviction petition should not have been dismissed at the first stage of postconviction proceedings because it is not frivolous or patently without merit. According to defendant, when considered in conjunction with the record, his petition sufficiently alleges that he was deprived of his due process rights and the right to effective assistance of counsel. Specifically, defendant contends that the trial court's admonitions and his attorney's acquiescence confused and misled him regarding the following: (1) what rights he waived and retained by submitting to a stipulated bench trial; (2) whether he consented to a sentencing cap of 20 years or an agreed-upon sentence of 20 years; and (3) the procedural steps that he was required to take to preserve his right to appeal. In response, the State argues that the trial court properly dismissed defendant's *pro se* postconviction petition because defendant did not sufficiently allege the constitutional violations that he now articulates on appeal. We agree with defendant.

■ To withstand dismissal at the first stage of postconviction proceedings, a *pro se* petition for postconviction relief need only contain a simple statement that presents the "gist of a claim for relief" when nothing in the trial record contradicts that claim. *People v. Hernandez*, 283 Ill. App. 3d 312, 316, 669 N.E.2d 1326, 1329 (1996). To state the "gist of a claim," the *pro se* petitioner need not construct legal arguments or even understand what legal arguments the facts presented in the petition might support. At the first stage, the trial court should determine whether the petition contains sufficient facts upon which a meritorious constitutional claim *could be* based. Trial courts are encouraged to closely scrutinize supporting documents, including the record, at this stage of the process. *People v. Lemons*, 242 Ill. App. 3d 941, 946-47, 613 N.E.2d 1234, 1238 (1993). We review *de novo* a first-stage dismissal of a *pro se* postconviction petition. *People v. Coleman*, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998) (referring to review as plenary).

■ In his *pro se* postconviction petition, defendant alleges, albeit inartfully, that he was denied effective assistance of counsel because, prior to sentencing, his lawyer failed to (1) discuss matters related to

sentencing with him, (2) seek mitigating evidence, and (3) request a presentence investigation report. In its order dismissing defendant's postconviction petition, the trial court concluded that this portion of defendant's claim was patently without merit because defendant had negotiated an agreed sentence and "got what he bargained for."

The record belies the trial court's characterization of what took place during defendant's plea proceedings. Instead, it evinces a series of miscommunications between the court, defense counsel, and the State's Attorney. At one point in the proceedings, the court, defense counsel, and the State's Attorney appear to agree that the parties had agreed to a sentencing cap. Later, the court, defense counsel, and the State's Attorney appear to agree that the parties had agreed to a sentence of 20 years. No one ever attempted to clarify the parties' sentencing agreement for the record by explaining, for example, that at one point or the other, the court or one of the parties misspoke.

The differences between a sentencing cap and an agreed-upon sentence are significant. If a sentence has been agreed upon, then when a defendant pleads guilty, all the trial court need do is hear representations and make a finding as to the defendant's record of delinquency or criminality (see 730 ILCS 5/5—3—1 (West 1998)) and impose the agreed-upon sentence. On the other hand, if the parties have agreed only to a sentencing cap, then when the defendant pleads guilty, section 5—3—1 of the Unified Code of Corrections *mandates* the court to order a presentence investigation conducted and a presentence report prepared for use at a sentencing hearing to be held on some future date (730 ILCS 5/5—3—1 (West 1998)). Further, the parties are each permitted to present their respective evidence in aggravation and mitigation, with the State typically arguing that the court should impose the maximum sentence permitted by the cap, while the defendant urges the court to impose something less. Clearly, if a defendant and his counsel believe the plea agreement has the defense agreeing to a specific sentence and not merely a cap, then no effort will be made to present either evidence or argument as to why some sentence less than the sentencing cap should be imposed.

Although defendant failed to articulate a coherent legal argument incorporating these facts, we are satisfied that he stated the gist of a constitutional claim that was not contradicted by the record.

The entering of a guilty plea (or submission to a stipulated bench trial) is a serious event—particularly when doing so results in a 20-year prison sentence. With so much at stake, the parties and the trial court ought to ensure that they all understand exactly what they are doing and what the terms of the plea agreement are. Even after careful scrutiny, this record remains unclear as to (1) whether defendant

entered a negotiated plea or submitted to a stipulated bench trial (and if the latter, exactly what rights he preserved by doing so), and (2) the terms defendant agreed to regarding his sentence. All of this uncertainty could have been avoided had the court demanded—or the attorneys provided—clarity.

Because defendant's *pro se* postconviction petition stated the gist of a claim for relief, we reverse the trial court's stage-one dismissal of his petition. In doing so, we express no opinion regarding the merits of defendant's petition when subjected to further scrutiny (or evidence) at subsequent proceedings. For the reasons that follow, we decline to address the merits of defendant's other claims for relief.

### C. The State's Request That We Enter Separate Rulings on Defendant's Various Claims for Postconviction Relief

■ Citing *People v. Beard*, 301 Ill. App. 3d 279, 703 N.E.2d 552 (1998), the State requests that we enter separate rulings on each of defendant's claims, reversing the trial court as to those claims we deem meritorious and affirming the dismissal of those we do not. In *Beard*, this court reviewed a trial court's dismissal of a *pro se* postconviction petition at stage one. We concluded that one of the defendant's claims was properly dismissed but that the defendant had raised the gist of a constitutional claim in another. Accordingly, we reversed in part and affirmed in part. *Beard*, 301 Ill. App. 3d at 289, 703 N.E.2d at 559. For the following reasons, we decline to do in this case what we did in *Beard*.

In *Beard*, the issue the State now raises—namely, whether section 122—2.1 of the Act allows for the parsing of claims—was not presented to, or analyzed by, this court. Prompted by the State in this case, we have considered the issue and now conclude that section 122—2.1 of the Act does not allow for partial dismissals of *pro se* postconviction petitions at stage one.

Section 122—2.1 of the Act directs the trial court to dismiss a postconviction petition if it determines that the petition is frivolous or patently without merit. 725 ILCS 5/122—2.1(a)(2) (West 1998). As written, it is, in essence, an all-or-nothing statute. That is to say, if the petition is in all respects frivolous or patently without merit, it should be dismissed. On the other hand, if the court determines that the petition presents *any* claim that is not frivolous or patently without merit, then the court should "order the petition to be docketed for further consideration" under the Act, as provided in section 122—2.1(b) of the Act (725 ILCS 5/122—2.1(b) (West 1998)). We conclude that the language of section 122—2.1 of the Act does not allow for the partial dismissal of a defendant's *pro se* petition for postconviction relief.

The Third District Appellate Court reached a similar conclusion in *People v. Noel*, 291 Ill. App. 3d 541, 684 N.E.2d 414 (1997), in which the trial court had dismissed one portion of the defendant's *pro se* postconviction petition under section 122—2.1 of the Act and allowed another portion to proceed to stage two. The appellate court wrote the following:

> "The Post-Conviction Hearing Act does not authorize *partial* dismissals of postconviction petitions as frivolous or patently without merit. If some part of the petition is not frivolous, the trial court should appoint counsel, who can appropriately amend the petition. Allowing partial dismissal raises serious questions about the judicial review process, since first stage dismissals are final and appealable judgments. In the interest of judicial economy, and to avoid piecemeal litigation, trial judges should refrain from entering partial summary dismissals." (Emphasis in original.) *Noel*, 291 Ill. App. 3d at 544, 684 N.E.2d at 416.

We agree with the Third District Appellate Court. Whether we focus on the language of section 122—2.1 of the Act or on pertinent matters of public policy and judicial administration, we reach the same result: the legislature did not intend to authorize partial dismissals of *pro se* postconviction petitions when it enacted section 122—2.1 of the Act. As to the portion of our decision in *Beard* that holds otherwise, we decline to follow it further.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

MYERSCOUGH and KNECHT, JJ., concur.