THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER A. LEE, Defendant-Appellant.

Third District    No. 3—00—0664

Opinion filed December 7, 2001.—Rehearing denied January 23, 2002.

Carrie B. Marche, of State Appellate Defender's Office, of Ottawa, for appellant.

Stewart Umholtz, State's Attorney, of Pekin (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Christopher A. Lee, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)). He filed a successive postconviction petition that was dismissed as frivolous. On appeal from the denial of his petition, the defendant argues that: (1) section 122—2.1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—2.1 (West 2000)) is unconstitutional; and (2) his 80-year extended-term sentence violates the constitutional rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We hold that *Apprendi* applies retroactively to the defendant's appeal and that the defendant's sentence is unconstitutional. Accordingly, we vacate the trial court's summary dismissal and modify the defendant's sentence to the maximum nonextended term of 60 years.

## I. FACTS

On January 27, 1989, a jury found the defendant guilty of first degree murder. In imposing sentence, the trial court found that the defendant had committed an exceptionally brutal and heinous crime indicative of wanton cruelty. The defendant was sentenced to an extended term of 80 years' imprisonment.

The defendant's sentence was affirmed on appeal. *People v. Lee*, No. 3—89—0145 (1990) (unpublished order under Supreme Court Rule 23). He filed his first postconviction petition in September 1994, which was dismissed by the trial court as untimely. This court affirmed that ruling in *People v. Lee*, 292 Ill. App. 3d 941, 688 N.E.2d 673 (1997).

On August 10, 2000, the defendant filed a second request for postconviction relief, arguing that he was unconstitutionally sentenced to an extended-term sentence under *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. The trial court dismissed the successive petition as untimely and frivolous and patently without merit.

## II. ANALYSIS

### A. Public Act 83—942

First, we address the defendant's argument that the summary

dismissal of his petition was improper because Public Act 83—942 (Pub. Act 83—942, eff. November 23, 1983), which enacted legislation authorizing the first-stage dismissal of a postconviction petition, violates the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)).

The defendant's claim must fail in light of *People v. Sharpe*, 321 Ill. App. 3d 994, 749 N.E.2d 432 (2001). In *Sharpe*, this court held that Public Act 83—942 did not violate the single subject clause. *Sharpe*, 321 Ill. App. 3d 994, 749 N.E.2d 432. Other courts have reached the same conclusion. See *People v. Roberts*, 318 Ill. App. 3d 719, 743 N.E.2d 1025 (2000); *People v. Jones*, 318 Ill. App. 3d 1189, 744 N.E.2d 344 (2001); *People v. Dorris*, 319 Ill. App. 3d 579, 746 N.E.2d 303 (2001); *People v. Vilces*, 321 Ill. App. 3d 937, 748 N.E.2d 1219 (2001). Accordingly, we find no reason to depart from our earlier holding.

### B. *Apprendi*

Next, the defendant agues that his postconviction petition should not have been summarily dismissed because it raised the gist of a meritorious claim. Specifically, the defendant claims that his 80-year extended-term sentence is unconstitutional because it violates the rule set forth in *Apprendi*.

### 1. *Successive postconviction petitions*

■ Initially, we note that the defendant raises this challenge in his second request for postconviction relief. The Act contemplates the filing of only one petition. *People v. Free*, 122 Ill. 2d 367, 522 N.E.2d 1184 (1988). Consequently, a ruling on a postconviction petition normally has *res judicata* effect as to all claims that were raised or could have been raised in the initial petition. *Free*, 122 Ill. 2d 367, 522 N.E.2d 1184. However, the filing of successive postconviction petitions sets forth two opposing interests—the State's interest "in providing a forum for the vindication of the petitioner's constitutional rights" and the State's "legitimate interest in the finality of criminal litigation and judgments." *People v. Flores*, 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083 (1992). When an error could not have been presented in an earlier proceeding, the procedural bars of waiver and *res judicata* "may be ineffectual in bringing about that finality which ordinarily follows direct appeal and the first post-conviction proceeding." *Flores*, 153 Ill. 2d at 275, 606 N.E.2d at 1083. In such cases, a successive postconviction petition may be allowed pursuant to concepts of fundamental fairness. *People v. Caballero*, 179 Ill. 2d 205, 688 N.E.2d 658 (1997).

■ Here, the defendant filed his first postconviction petition in September of 1994. His petition alleged that the trial court erred in allowing a tape of a codefendant's conversation to be admitted and

played to the jury. He did not include a challenge that his extended-term sentencing factor should have been pled and proved to a jury beyond a reasonable doubt because the United States Supreme Court had yet to consider the issue. Two months after the Supreme Court decided *Apprendi*, the defendant filed a second postconviction petition arguing that his sentence violated his constitutional rights. This due process claim could not have been presented in the earlier proceeding. Accordingly, we refuse to apply the procedural limits of waiver and *res judicata* to bar the defendant's successive petition.[1]

## 2. *Timeliness*

■ The defendant's petition survives an attack based on timeliness as well. Section 122—1(c) of the Act provides:

"No proceedings *** shall be commenced more than 6 months after the denial of a petition for leave to appeal *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122—1(c) (West 2000).

Based on this provision, the State claims that the defendant's petition is time barred and that the trial court's earlier finding of untimeliness is *res judicata*. We disagree.

■ Although the defendant's second postconviction petition was filed 11 years after his conviction, the petition sufficiently alleges that the delay was not due to the defendant's culpable negligence. The sole issue raised in the defendant's second petition was that *Apprendi* rendered his extended-term sentence unconstitutional and required that his 80-year term be vacated. He cited the *Apprendi* opinion issued in June 2000 and admitted that the issue had not been included in his direct appeal or his first petition for postconviction relief. His second petition was filed on August 14, 2000. Based on these facts, we find that the defendant has sufficiently met his burden of showing that the delay in filing his successive petition was not due to his culpable negligence. See *Caballero*, 179 Ill. 2d 205, 688 N.E.2d 658.

---

[1]In a footnote in *People v. Beachem*, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000), the court noted that several federal courts have concluded that *Apprendi* does not apply to successive postconviction petitions. The federal cases cited in *Beachem* and by the State in the instant appeal refused to apply *Apprendi* retroactively not because the *habeas corpus* petitions were successive but because the Supreme Court had not specifically authorized *Apprendi*'s retroactive application. Under federal *habeas corpus* provisions, a new rule of constitutional law justifies a second collateral attack only if the Supreme Court makes the new rule retroactive to cases on collateral review. 28 U.S.C.A. §§ 2244(b)(2)(A), 2255 (West 1994 & Supp. 2000). The Illinois Post-Conviction Hearing Act does not contain such a mandate.

### 3. Retroactive application of Apprendi

We turn now to the crux of the defendant's argument—whether *Apprendi* can be raised in a collateral proceeding. The defendant acknowledges that the decision in *Apprendi* was rendered well after his conviction. However, he argues that the rule should be applied retroactively to cases on collateral review under the test announced in *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989).

■ Decisions that announce a new constitutional rule are generally not applied retroactively. *People v. Moore*, 177 Ill. 2d 421, 686 N.E.2d 587 (1997) (public interest in the finality of criminal judgment when weighed against the fairness and integrity of criminal trials usually tips toward nonretroactivity). In *Teague*, the United States Supreme Court held that a new rule of law would only be applied retroactively to cases on collateral review under two limited exceptions. First, the rule should apply retroactively if "it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075. Second, the new rule should apply "if it requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty" ' [citation]." *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076. The scope of the second exception has been limited to those procedures "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077. Further, the second exception should only apply to rules of criminal procedure that " 'will properly alter our understanding of the *bedrock procedural elements*' " essential to the fairness of a conviction. (Emphasis in original.) *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356-57, 109 S. Ct. at 1076, quoting *Mackey v. United States*, 401 U.S. 667, 693-94, 28 L. Ed. 2d 404, 421, 91 S. Ct. 1160, 1180-81 (1971). The second exception applies not only to an accurate conviction but also to new procedures that question the accuracy of a sentence. *Teague*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060.

The exceptions announced in *Teague* have been adopted and applied by the Illinois Supreme Court. See *People v. Flowers*, 138 Ill. 2d 218, 561 N.E.2d 674 (1990). In *Flowers*, the supreme court held that *People v. Reddick*, 123 Ill. 2d 184, 526 N.E.2d 141 (1988), did not apply retroactively. In *Reddick*, instructions were tendered to the jury that erroneously stated the burden of proof for voluntary manslaughter mitigating mental states. In addressing the defendant's appeal, the supreme court declared the instructions unconstitutional. The *Flowers* court acknowledged that the *Reddick* rule was of constitutional significance. However, it refused to apply it retroactively under the

second *Teague* exception. It concluded that the new rule announced in *Reddick* did not establish "such a component of basic due process so as to fall within [the *Teague* exception]." *Flowers*, 138 Ill. 2d at 242, 561 N.E.2d at 684.

In determining whether *Apprendi* falls within the second *Teague* exception, the appellate court has interpreted *Flowers* differently. Several panels have held that *Apprendi* reaches to the core of our due process rights and have applied the new constitutional rule to cases on collateral review. *People v. Beachem*, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000); *People v. Rush*, 322 Ill. App. 3d 1014, 748 N.E.2d 832 (2001); *People v. Herring*, 324 Ill. App. 3d 458 (2001). Others have analogized the constitutional rule set forth in *Apprendi* to the constitutional rule announced in *Reddick* and have determined that *Apprendi* does not apply retroactively. *People v. Kizer*, 318 Ill. App. 3d 238, 741 N.E.2d 1103 (2000); *People v. Jones*, 321 Ill. App. 3d 515, 747 N.E.2d 1074 (2001); *People v. Scullark*, 325 Ill. App. 3d 876 (2001).

We agree with the rationales set forth in *Beachem*, *Rush* and *Herring*. The *Apprendi* court held, as a matter of due process, that any facts, other than a prior conviction, that increase the penalty for an offense beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. In reaching this conclusion, the Supreme Court noted that enhanced sentencing without proof beyond a reasonable doubt dealt with "constitutional protections of surpassing importance." *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355. Moreover, the Court noted that the traditional role of jury—to determine those facts that determine the maximum sentence under the law—is "an indispensable part of our criminal justice system." *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.

■ It is certain that the rule announced in *Apprendi* speaks to the core of. a defendant's due process rights. We find that requiring sentencing factors to be proven beyond a reasonable doubt before a defendant's sentence can be increased beyond the maximum nonextended term is a watershed rule of surpassing importance in the criminal justice system. The failure to require such proof directly affects the accuracy of a sentence. We therefore conclude that the rule announced in *Apprendi* is a necessary component of fundamental fairness that falls squarely within the narrow exception announced in *Teague*.

### 4. *Merits of the claim*

The defendant argues that his petition should not have been

dismissed because his 80-year sentence based on the extended-term factor that the crime was accompanied by brutal and heinous behavior indicative of wanton cruelty violates the constitutional requirements of *Apprendi*.

The record demonstrates that the brutal and heinous nature of the crime was not an element included in the indictment. Further, it was not tendered to the jury or proven beyond a reasonable doubt at trial. Nor did the trial court find evidence of the factor beyond a reasonable doubt when it sentenced the defendant beyond the statutory maximum term of 60 years in prison. Thus, the defendant's extended-term sentence based on the fact that the crime was an "exceptionally brutal and heinous one indicative of wanton cruelty" clearly offends the constitutional tenets of *Apprendi*. See *Beachem*, 317 Ill. App. 3d 693, 740 N.E.2d 389; *People v. Armstrong*, 318 Ill. App. 3d 607, 743 N.E.2d 215 (2000); *People v. Chanthaloth*, 318 Ill. App. 3d 806, 743 N.E.2d 1043 (2001); *Rush*, 322 Ill. App. 3d 1014, 748 N.E.2d 832.

The State argues that we should reject the defendant's claim that *Apprendi* bars the imposition of an extended-term sentence, citing *People v. Vida*, 323 Ill. App. 3d 554, 752 N.E.2d 614 (2001). In *Vida*, the defendant was sentenced to 100 years in prison based on the brutal and heinous nature of the crime under the extended-term provision of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—2(a)(1) (West 1998)). On appeal, the First District of the appellate court noted that the same factor also appeared under section 5—8—1(a)(1)(b) of the Code. 730 ILCS 5/5—8—1(a)(1)(b) (West 1998). Under that provision, a defendant convicted of first degree murder could receive life imprisonment if the trial court found that the crime was brutal and heinous in nature. The court interpreted the entire first degree murder sentencing provision (section 5—8—1(a)(1)) as a whole and concluded that the sentencing range for first degree murder is 20 years to natural life imprisonment. Since the defendant received a sentence that did not exceed that range, his sentence was not in violation of *Apprendi*. *Vida*, 323 Ill. App. 3d 554, 752 N.E.2d 614. We disagree with the *Vida* court's sweeping interpretation of sections 5—8—1(a)(1) and 5—8—2(a)(1) and decline to follow its holding.

## III. CONCLUSION

We find that the imposition of the defendant's extended-term sentence was unconstitutional. The maximum possible sentence for first degree murder under section 5—8—1(a)(1)(a) is 60 years in prison. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(a). Pursuant to our authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we modify the defendant's sentence of 80 years' imprisonment to 60 years.

The judgment of the circuit court of Tazewell County is vacated and the defendant's sentence is modified.

Vacated; sentence modified.

HOMER, P.J., and SLATER, J., concur.