THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NANCY RISH, Defendant-Appellant.

Third District   No. 3—01—0161

Opinion filed November 10, 2003.

HOLDRIDGE, J., concurring in part and dissenting in part.

Joshua Sachs (argued), of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael M. Glick (argued), Assistant Attorney General, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:
On November 2, 1988, defendant Nancy Rish was convicted by a

jury of first-degree murder and aggravated kidnaping. She was sentenced to a term of natural life imprisonment for murder and a concurrent 30-year term for kidnaping. This court affirmed defendant's convictions and sentences on direct appeal. *People v. Rish*, 208 Ill. App. 3d 751, 566 N.E.2d 919 (1991). Defendant then filed a postconviction petition which, along with a subsequent amended petition and two supplemental petitions, raised 16 separate claims. Twelve of the claims were dismissed at the second, pleading, stage. The remaining four claims proceeded to the third stage for an evidentiary hearing and, ultimately, were also dismissed. Defendant appeals from the denial of eight of her claims, seven of which were dismissed without an evidentiary hearing. We affirm in part, reverse in part, and remand.

## FACTS

A detailed recitation of the evidence was set forth in our decision on direct appeal of this case. See *Rish*, 208 Ill. App. 3d at 754-67, 566 N.E.2d at 921-30. We therefore relate only those facts necessary to a general understanding of the case and the issues presented.

On September 2, 1987, Stephen B. Small was kidnaped and a ransom demand was sent to his home. Small's sister called the police, who immediately initiated an investigation. The investigation focused on Danny Edwards and the defendant, who lived together in a townhouse in Bourbonnais.

On September 4, a search warrant was executed for the townhouse. That evening, Edwards led the police to a rural area where Small's body was recovered. It appeared that Small had been placed in a wooden box which had been fitted with a PVC pipe designed to give him air for 24 to 48 hours. The box also contained a light connected to an automobile battery, a one-gallon jug of water, candy bars, gum, and a flashlight. Small's wrists were handcuffed and the box was buried. The coroner later determined that his death was caused by "asphyxia due to suffocation."

That same night, the police arrested defendant and held her at the station for questioning. Defendant requested a specific attorney, J. Scott Swaim, who had previously represented her, and she was given an opportunity to obtain his counsel. The defendant did not know that Swaim was friends with the victim. The two had socialized at dinner parties and entertained together on several occasions. However, Swaim did not inform defendant of his friendship with Small prior to or at any time after undertaking representation.

For the next four days, between September 4 and September 8, the police questioned defendant with counsel present. Eight statements were elicited concerning her knowledge and actions in the early

days of September. None of the statements was totally consistent with any other.

On October 1, defendant was charged by indictment with first-degree murder and aggravated kidnaping for her alleged role in Small's death. On November 2, 1988, defendant was tried by a jury. No direct evidence was presented linking her to the kidnaping or death of Small. However, the State was able to enter defendant's eight inconsistent statements into evidence. Witnesses were also presented who testified that they had seen her at various times with Edwards when he was purchasing some items that were ultimately found with Small's body. Other witnesses reported that they had observed her at various related locations during the course of the kidnaping and ransom calls. Lastly, the State submitted evidence that Edwards had used their garage to build the box in which Small's body was found. The jury found defendant guilty on both counts, and the trial court sentenced her to a term of natural life imprisonment and a concurrent 30-year term.

After this court affirmed defendant's convictions and sentences and her petition for leave to appeal to the supreme court was denied, defendant filed a postconviction petition. Following a substitution of counsel, a 12-claim amended petition was submitted. A separate supplemental petition was also filed, adding two additional claims. The circuit court held an evidentiary hearing on four of the claims. Ultimately, all 14 of the claims were dismissed.

Defendant then filed a second supplemental petition, raising two more claims, but these were also dismissed without an evidentiary hearing. Defendant's motion for reconsideration was denied.

On appeal, defendant challenges the dismissal of eight of her postconviction claims, arguing them as four issues: (1) whether she was denied due process because the prosecutor presented allegedly false contentions to the jury; (2) whether the trial court erred in finding that two discovery violations were not material within the meaning of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); (3) whether claims of ineffective assistance of counsel at custodial interrogation were inappropriately dismissed at the pleading stage; and (4) whether defendant is entitled to sentencing relief pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

## ANALYSIS

█ The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq*. (West 2000)) provides a three-step process for adjudication of petitions for postconviction relief. At the first stage, the circuit court does

not decide the petition on the merits; instead, without input from the State or further pleadings from the defendant, the court determines if the petition presents the gist of a claim for relief, that is, whether the petition contains sufficient facts upon which a meritorious constitutional claim could be based. See *People v. Gaultney*, 174 Ill. 2d 410, 675 N.E.2d 102 (1996). At this first stage, "all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998).

If the court does not dismiss the petition at the first stage, it will, in the second stage, appoint counsel to represent an indigent defendant who requests legal assistance, and counsel will have an opportunity to amend defendant's postconviction petition. See 725 ILCS 5/122—4 (West 2000). The State may then file a motion to dismiss, and the court will determine whether an evidentiary hearing on the merits of the defendant's petition is warranted. See 725 ILCS 5/122—5 (West 2000). A defendant is not entitled to an evidentiary hearing as a matter of course; it is required only when the allegations of the petition, supported where necessary by the trial record and affidavits, make a substantial showing of a constitutional violation. *People v. Ward*, 187 Ill. 2d 249, 255, 718 N.E.2d 117, 123 (1999); *People v. Henderson*, 171 Ill. 2d 124, 140, 662 N.E.2d 1287, 1296 (1996). In making this determination, all well-pleaded facts in the defendant's petition and any accompanying affidavits are taken as true. *People v. Caballero*, 126 Ill. 2d 248, 259, 533 N.E.2d 1089, 1091 (1989). Mere conclusions, however, are insufficient to require a hearing under the Act. *Coleman*, 183 Ill. 2d at 381, 701 N.E.2d at 1072. The evidentiary hearing and a determination on the merits is the third and final stage of postconviction proceedings. See 725 ILCS 5/122—1 through 122—8 (West 2000); see also *People v. Patton*, 315 Ill. App. 3d 968, 735 N.E.2d 185 (2000). In considering plaintiff's appeal, we have divided our analysis of defendant's postconviction claims into two separate sections, according to the appropriate standards of review.

## Claim Subject to Deferential Review

### *Brady* Violation

■ We first consider the denial of count III, alleging a violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Since this count survived to the third stage for an evidentiary hearing, we will not disturb the circuit court's ruling unless it is manifestly erroneous. See *Coleman*, 183 Ill. 2d at 385, 701 N.E.2d at 1074.

Defendant asserts that the prosecution committed a *Brady* viola-

tion when it presented James Witvoet as an identification witness, but failed to disclose that criminal proceedings were pending against him. At the time he testified, two charges of illegal operation of a migrant labor camp were pending against Witvoet in Kankakee County. Each count was a petty offense, with a minimum fine of $100 and a maximum fine of $500. Defendant maintains that the State's omission was prejudicial to her case because the criminal charges could have been used to impeach Witvoet's testimony.

We do not find defendant's assertion tenable. Although the government is obligated to turn over evidence in its possession that is favorable to the accused, the evidence must be material to guilt or punishment. See *Brady*, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97. Evidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 94 L. Ed. 2d 40, 57, 107 S. Ct. 989, 1001 (1987).

In this case, the prosecutor's failure to disclose Witvoet's pending criminal charges was not a *Brady* violation because the criminal charges were not material to defendant's guilt. Witvoet testified that he was driving with another person in an area near the crime scene when he saw a van similar to one owned by Edwards. Witvoet saw two people in the van: a male with dark hair and another individual with dishwater blonde hair, similar to defendant's. However, Witvoet was unable to say whether the blonde passenger was a man or a woman.

As the circuit court noted, when a witness has a pending criminal charge, the concern is that he may testify falsely in return for leniency. Witvoet first reported his observations to the police in September of 1987; he was not charged criminally until 10 months later, in July of 1988. His testimony at trial was consistent with his earlier report to the police. There is no indication that Witvoet altered his testimony to gain favor with the State. Indeed, Witvoet testified at the postconviction hearing that the charges did not affect his testimony because he knew that the State had mistakenly charged him instead of his father, James Witvoet, Sr. Witvoet believed that the charges would ultimately be dismissed, and they were, in January of 1989, for that reason. There were no plea negotiations with the State's Attorney prior to dismissal.

Of course, the relevant question is not whether Witvoet's testimony was affected by the criminal charge, but whether the result of the trial was undermined by defendant's inability to impeach Witvoet with those charges. Given the lack of gravity of the charges,

their timing, Witvoet's professed lack of concern, and the absence of any plea bargain, we believe the impeachment value of the charges was extremely low. Accordingly, we find that the circuit court's ruling that the State's discovery violation was not material was not manifestly erroneous. The denial of count III of defendant's postconviction petition is affirmed.

## Claims Subject to *De Novo* Review

■ The following seven claims will be reviewed *de novo*, since no deference is extended to the trial court when no evidentiary hearing has been held. *Coleman*, 183 Ill. 2d at 388-89, 701 N.E.2d at 1075.

## Ineffective Assistance of Counsel

Defendant challenges the dismissal of count I of her petition, which alleged that her right to counsel was violated during custodial interrogation. She complains that her attorney at the interrogation, J. Scott Swaim, had an interest in the case that was adverse to her own. Specifically, she claims that Swaim was a close friend of the victim, Stephen Small. In addition, Swaim had been the attorney for a Kankakee police officer involved in the case, Detective Robert Anderson. These two conflicts, the defendant argues, motivated Swaim to allow her to give eight inconsistent statements over the course of the four-day interrogation, statements that were later used by the prosecution at trial.

The defendant argues that both the fifth amendment to the United States Constitution (U.S. Const., amend. V) and article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, § 10) entitle her to conflict-free counsel during custodial interrogation. The circuit court, noting the limited nature of counsel's function under the fifth amendment, found no violation, stating:

"The point of the [f]ifth amendment, including the Miranda warnings, is to prevent police coercion of criminal suspects. It is clear to the [c]ourt on the record before it, that Ms. Rish was advised of her Miranda warnings, including her right to remain silent and her right to stop the questioning at any time. Swaim was with her throughout police questioning, stopping it occasionally and instructing her not to answer some questions. This would fulfill the purpose of the [f]ifth amendment—to insure the [d]efendant knew her rights, and to insure that any statements she made were the product of her voluntary choice and not the product of police coercion. The [c]ourt therefore finds that there was no [f]ifth amendment violation here."

■ We agree that a defendant's right to counsel under the fifth amendment does not include the same guarantee of effective assistance

of counsel contained in the sixth amendment but, rather, only protects a defendant from coerced confession. However, we believe that the Illinois Constitution entitles those subject to custodial interrogation the right to conflict-free counsel. Ill. Const. 1970, art. I, §§ 2, 10. In Illinois, the right to the assistance of counsel has historically been afforded a certain degree of judicial solicitude and due process protection. *People v. McCauley*, 163 Ill. 2d 414, 441, 645 N.E.2d 923, 937 (1994). "The State's due process guarantee [citation] provides the general basis for an accused's right to the *assistance* as well as presence of counsel during any custodial interrogation." (Emphasis added.) *McCauley*, 163 Ill. 2d at 441, 645 N.E.2d at 937. This right has not been found satisfied by the mere formality of the appointment of an attorney, but has required effective representation. *McCauley*, 163 Ill. 2d at 442, 645 N.E.2d at 937. "[D]ue process of law requires that an accused shall be given the *benefit* of counsel." (Emphasis in original.) *McCauley* 163 Ill. 2d at 441, 645 N.E.2d at 937.

Effective assistance of counsel has long been recognized to include the right to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. *People v. Walker*, 253 Ill. App. 3d 93, 107, 624 N.E.2d 1353, 1363 (1993). Although this right can be waived, it is well settled that a defendant must first be adequately informed of a conflict's significance before the right will be deemed to have been waived. See *People v. Coleman*, 301 Ill. App. 3d 290, 301, 703 N.E.2d 137, 145 (1998).

In this case, the defendant alleges she was denied information material to a knowing and intelligent decision to waive her right to the presence of an attorney wholly committed to her interests. She claims that her attorney offered no explanation to ensure her understanding of the potential significance of his personal relationship with Small and that, in fact, defense counsel did not disclose this relationship at all during the four days defendant was subject to police interrogation.

■ "Due process essentially requires 'fairness, integrity, and honor in the operation of the criminal justice system ***.' " *McCauley*, 163 Ill. 2d at 441, 645 N.E.2d at 937, quoting *Moran v. Burbine*, 475 U.S. 412, 467, 89 L. Ed. 2d 410, 450, 106 S. Ct. 1135, 1165 (1986) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). In a situation such as this one, where counsel for a criminal suspect possibly labors under a serious conflict of interest, one which potentially places him in a position adverse to that of his client, the fairness that is fundamental to our system of justice is suspect. The defendant had a right to expect that her requested counsel was acting completely in her interests. Such was not necessarily the case here. The allegations

raised on the pleadings are sufficient to state a claim for ineffective assistance under Illinois due process guarantees. It was improper for the trial court to dismiss the claim without first holding an evidentiary hearing.

The trial court must hold a hearing on the claim raised by the defendant and should apply the test for ineffective assistance developed in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In that test, the defendant first must establish that her counsel's performance was so deficient that the representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. She also must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. We adopt this test for ineffective assistance claims under the Illinois Constitution since many courts have substantial experience applying it, from its wide use as the standard for ineffective assistance under the sixth amendment to the United States Constitution.

We find that the circuit court erred in its dismissal of count I of defendant's postconviction petition. Accordingly, we reverse and remand for an evidentiary hearing and for the application of the *Strickland* test. We do so despite the fact that, in dismissing count I, the circuit court made an alternative finding that if *Strickland* was applicable, attorney Swaim was not ineffective. That determination was made without benefit of an evidentiary hearing. Defendant is entitled to such a hearing because her attorney's undisclosed conflict of interest constitutes a substantial showing of a constitutional violation under the Act.

■ Defendant also challenges the circuit court's dismissal of counts II and XIII of her postconviction petition. Those counts involved allegations of ineffective assistance because of her trial counsel's failure to raise a sixth amendment claim of custodial, preindictment ineffective assistance of counsel at trial and again on direct appeal. The circuit court dismissed both counts, finding the absence of a sixth amendment right to counsel at that time. Defendant claims error, asserting that adverse judicial proceedings had begun because of the State's decision to prosecute her shortly after she was taken into custody.

We reject this challenge. The sixth amendment states in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defence." U.S. Const., amend. VI. However, the sixth amendment does not attach

until at or after the initiation of adversarial judicial proceedings, whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment. *People v. Garrett*, 179 Ill. 2d 239, 247, 688 N.E.2d 614, 618 (1997). In this case, the circuit court appropriately dismissed defendant's sixth amendment claim, because the right had not yet attached. None of the identified adversarial judicial proceedings had yet begun.

We also reject defendant's argument that adverse judicial proceedings had already begun due to the State's implementation of a decision to prosecute her. We acknowledge that the level of prosecutorial involvement may be considered in determining whether a defendant's sixth amendment right to counsel has attached. See *Garrett*, 179 Ill. 2d at 248, 688 N.E.2d at 618. However, we do not find this argument meritorious, because defendant has not cited to any portion of the record which supports her allegation that the prosecution had reached a decision to prosecute her shortly after she was taken into custody. Although she directs our attention to a transcript of Sergeant William Willis in which he stated that the State's Attorney's office was involved in the preparation of the search warrant affidavit, defendant provides no authority to support the proposition that this conduct would constitute a level of prosecutorial involvement justifying the attachment of the sixth amendment right to counsel. We affirm the dismissal of counts II and XIII of defendant's postconviction petition.

## Due Process

Defendant also challenges the dismissal of her claim (count IV) that prosecutorial misconduct resulted in a violation of due process. At trial, the prosecutor asserted during his closing arguments that defendant had lied in her testimony. She had testified that Detective Erickson threatened her at the police station immediately following her arrest by asserting that she could potentially receive the electric chair if convicted. The prosecutor claimed that defendant's story about the incident was a perjured fabrication, because Erickson was not at the police station on the day of her arrest, and he denied having had such a conversation with defendant at any other time or place. However, one year after trial, Illinois State Police Sergeant William Willis stated in a television appearance that *he* was the officer who had made the "threat" against her while at the station.

Defendant contends that the prosecution's argument constituted a knowingly false allegation of perjury that violated her due process rights. In support, she asserts that, as a matter of law, any information known by the police is automatically imputed to the prosecution.

Contrary to defendant's contention, knowledge by police officers is

not automatically imputed to the prosecution in a *per se* manner. Rather, the imputation requires an individualized focus on the factual circumstances. Among the factors to be considered would be the reasonableness of such imputation, whether the failure to transmit such knowledge up the informational chain was inadvertent or intentional, and whether any real prejudice occurred. *People v. Robinson*, 157 Ill. 2d 68, 80, 623 N.E.2d 352, 358 (1993).

In this case we are uncertain whether Willis's knowledge should be imputed to the prosecution. One factor weighing against such attribution is that defendant helped to create the problem by misidentifying the maker of the statement as Detective Erickson. As the circuit court noted:

> "If [defendant] had correctly identified Sergeant Willis, the State would have confronted him, and the truth would have come out. If she had not identified any one at all, and merely said it was a policeman, the State could then have inquired of everyone involved in the investigation. But when she says it was Detective Erickson and Erickson denies it, there is no obligation on the State to then conduct a further investigation of anybody involved in her questioning. This Court has seen Sergeant Willis testify in court. He is nowhere near the size of Detective Erickson. There is no explanation in the record how the Defendant came to identify the maker of the alleged threat as Detective Erickson."

On the other hand, because no evidentiary hearing was held, we do not know whether Willis intentionally hid his knowledge from the prosecution, nor do we know whether he told any other officers or investigators about the incident. Under the circumstances, we believe that an evidentiary hearing is necessary. We therefore reverse the dismissal of count IV of defendant's postconviction petition and remand for such a hearing.

### *Brady* Violation

■ We next consider defendant's challenge to the dismissals of counts IX and X of her postconviction petition. Count IX argued that a *Brady* violation occurred when the State knowingly made a false argument to the jury in its closing arguments regarding her alleged purchase of distilled water. Count X also averred a *Brady* violation in closing arguments because of the State's failure to disclose a laboratory report relating to the distilled water.

One week prior to trial, the Illinois State Police forensic science laboratory returned a report to the State's Attorney's office that no analysis of the liquid found in the jug next to Small's body could be done because of possible contamination of the sample by the forensic science laboratory equipment. Defendant asserts that the report would

have enabled the defense to impeach the connection between herself and the liquid found in the box where Small had been buried.

We believe the State committed a discovery violation when it failed to hand over the laboratory report to the defendant. Defendant requested the results of any testing pertinent to the case, and the attending forensic scientist was disclosed by the State as a possible witness. However, we find that the State's failure to divulge the report was not material within the meaning of *Brady*, because even had the report been divulged, there is no reasonable probability that it would have affected the outcome of the proceedings. See *Ritchie*, 480 U.S. at 57, 94 L. Ed. 2d at 57, 107 S. Ct. at 1001 (evidence is material only if there is reasonable probability that results of proceeding would have been different).

Three witnesses testified concerning the issue of distilled or bottled water. Linda Forestier, a hardware store clerk, testified that a man and woman similar in appearance to Edwards and the defendant entered the store together on or about August 31, 1987. The woman asked if the store sold distilled water. Forestier replied that it did not and directed the couple to a grocery store. On cross-examination, Forestier was unable to identify the defendant as the woman in the store that day.

Donna Jordan, an employee of Convenience Food Mart in Bourbonnais, testified that defendant, who was a regular customer, came into the store with a man who asked for bottled water. This occurred between August 29 and September 1, 1987. On cross-examination, Jordan stated that she was not sure that the defendant was in the store on the same night that the man came in to buy the water.

Arlene Bires, a clerk at Ruffin's Super Value in Aroma Park, testified that on September 3, 1987, Edwards came into the store and bought a few gallons of water and five or six candy bars. The defendant was not with Edwards.

The jug found with Small's body was not placed into evidence at trial by either party. Although the State informed the jury that some water was found with Small, no connection was ever established between the water the codefendant purchased and the water found in the box. Neither party focused on the water in closing arguments. Given the extremely low probative value of the testimony concerning the water, we do not believe that the State's failure to disclose the laboratory report had any impact on the trial. Accordingly, we affirm the dismissal of counts IX and X of defendant's postconviction petition.

### *Apprendi*

■ Finally, defendant contends that the trial court erred in dismiss-

ing count XVI of her postconviction petition, which argued that her extended-term sentence based on the aggravating factor of exceptionally brutal or heinous behavior indicative of wanton cruelty violated *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The circuit court declined to address the merits of her claim, reasoning that *Apprendi* should not be applied retroactively to cases on collateral review. We agree. Our supreme court recently held in *People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003), that *Apprendi* does not apply retroactively. We therefore affirm the dismissal of count XVI.

## CONCLUSION

For the reasons stated above, we affirm the denial of count III of defendant's postconviction petition and the dismissal of counts II, IX, X, XIII and XVI. We reverse the dismissal of count I, alleging ineffective assistance, and count IV, alleging prosecutorial misconduct, and remand for an evidentiary hearing. Affirmed in part and reversed in part; cause remanded.

PRESIDING JUSTICE McDADE, concurring in part, specially concurring in part and dissenting in part:

I agree with all but one part of the majority's decision.

### 1. Ineffective Assistance of Counsel

I concur with the analysis of defendant's claim of ineffective assistance of counsel based on the Illinois Constitution, but write separately to indicate my belief that the assistance was also ineffective based on the fifth amendment to the United States Constitution.

The majority notes that defendant's fifth amendment right to counsel does not include the same guarantee of effective or competent assistance contained in the sixth amendment, because the former protects defendant only from a coerced confession. I do not deny that the general consensus of the cases is supportive of that conclusion. I do not, however, believe that the conclusion adequately addresses the challenge raised by defendant because it relates only to the boundaries of the attorney's *functions* under the two amendments.

When a person who has been given *Miranda* warnings but has not yet been charged asks for legal representation, inherent in that request is an expectation that the attorney will be competent to render advice consistent with defendant's best interest and untainted by any competing or conflicting interests. This expectation is reasonable and is fully justified by the attorney's ethical obligation, imposed in all 50 states, not to undertake representation when a conflict exists. It is my understanding that an attorney has the ethical duty, regardless of the

nature or parameters of the representation, to advise anyone who is relying on his/her skill or judgment that there is an actual or potential conflict of interest. With specific regard to this case, I do not believe that that obligation, or the corresponding right of the defendant to rely on it, is dependent on whether representation was undertaken pursuant to the fifth or sixth amendment to the United States Constitution.

For this reason, I would find that counsel's failure to advise defendant of his relationship with the victim and allow her to decide whether or not to waive any conflict and put her fate in his hands was a violation of the United States Constitution's fifth amendment as well as of the Illinois Constitution.

## 2. *Apprendi* Issue

I also specially concur with the majority's decision on defendant's *Apprendi* claim. It is clear, as our opinion recites, that the decision in this matter is dictated by the Illinois Supreme Court's ruling in *People v. De La Paz,* 204 Ill. 2d 426, 791 N.E.2d 489 (2003), and I concur for that reason. I write separately to express my hope that that decision will be revisited at some point and my belief that it should be.

Certainly decisions limiting the potentially overwhelming impact of *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), are practical (and perhaps even necessary) to contain its reach and limit the number of new reviews of cases long since decided. Most recently, in *De La Paz,* our supreme court has prohibited any claims by persons whose direct appeals were completed before *Apprendi* was decided in 2000, finding that neither prong of the test set out in *Teague v. Lane,* 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), warrants its retroactive application.

In my view, it is unfortunate that, in arriving at that decision, the court has found that *Apprendi*'s rule does not "require[ ] the observance of 'those procedures that. . .are "implicit in the concept of ordered liberty." ' [Citations.]" *Teague,* 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073 (plurality op.). In arriving at its conclusion, our supreme court stated:

> "An error which does not seriously affect the fairness, integrity or public reputation of judicial proceedings in one or more cases cannot be such a bedrock procedural element essential to the fairness of a proceeding as to fall within the second *Teague* exception, requiring retroactive application in all cases." *De La Paz,* 204 Ill. 2d at 438.

Clearly, a sentencing hearing is a "judicial proceeding," and in the Third District alone, the same "brutal and heinous" issue as that raised in the instant case has been challenged in 24 cases. The *Ap-*

*prendi* court found that enhanced sentencing without the proof beyond a reasonable doubt implicated "constitutional protections of surpassing importance." *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355.

Similarly, the Illinois Supreme Court held that a finding that defendant's crime was **brutal** and **heinous** made by the circuit court by a preponderance of the evidence rather than by a jury beyond a reasonable doubt, as was the case in the matter at bar, violated the due process requirement articulated in *Apprendi* and could not stand. *People v. Swift*, 202 Ill. 2d 378, 392, 781 N.E.2d 292, 300 (2002).

These holdings appear to me to stand for the proposition that violation of this principle inherently affects the fairness, integrity and public reputation of the judicial proceeding involved. Therefore, I believe *Teague*, *Apprendi*, and *Swift* compel a finding of retroactivity and consideration of this case where defendant's sentence was increased beyond the statutory maximum because of the brutal and heinous factor.

### 3. *Brady* Violation

The majority finds that the failure of the State to disclose the laboratory report confirming the lab's inability to analyze the water found with the victim was a discovery violation pursuant to *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). But, it says, the violation is harmless because even if the report had been divulged, there was no reasonable probability that it would have affected the outcome of the trial. I cannot agree with that conclusion and, therefore, dissent from it.

The State's case against this defendant was purely circumstantial. Success in prosecuting her was dependent on the State being able to put together enough evidentiary pieces, none of which was dispositive standing alone, that cumulatively made a case for defendant's guilt.

To this end, *and knowing that there was no way of tying any water to this defendant,* the State produced three witnesses in an apparent attempt to associate defendant with Danny Edwards and the two of them with the purchase of bottled water of some kind. As is shown in the majority opinion, not one of the three provided any evidence that defendant, either alone or in concert with Edwards, had purchased any water of any kind.

The majority acknowledges that the testimony had "extremely low probative value." 344 Ill. App. 3d at 1117. In point of fact, it had no probative value at all—a fact that leaves me wondering why the witnesses were produced at all if not to bolster the State's case by innuendo, and why the State has battled in the circuit court and before

this court to keep the evidence in. I have to wonder if the jury, too, strove, possibly successfully, to find some significance in this testimony which, although admittedly without legal probity, had acquired some worth or utility simply by virtue of having been presented. For that reason, I cannot agree with the majority that the failure to provide the defense with a way to keep that testimony out is immaterial.

I believe the *Brady* violation was material and I would reverse the dismissal of counts IX and X of the postconviction petition and require a hearing on this issue on remand.

JUSTICE HOLDRIDGE, concurring in part and dissenting in part:
I concur in the majority's opinion except for its treatment of counts I and IV of Rish's postconviction petition. I would affirm the circuit court's dismissal of those counts.

### Count I: Ineffective Assistance of Counsel

I agree that during precharge custodial interrogation a person can invoke article I, sections 2 (due process) and 10 (right against self-incrimination), of the Illinois Constitution to secure the presence of an attorney. Ill. Const. 1970, art. I, §§ 2, 10; see also *People v. McCauley*, 163 Ill. 2d 414 (1994). I also have no objection to adopting the standard prescribed in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), for judging such an attorney's performance. In applying that standard, however, we must account for the necessities of context.

The strictures of representation at the precharge stage are considerably lower than those at the prosecution stage (where the *Strickland* standard originated). This principle flows naturally from the fact that jeopardy has not attached during precharge proceedings. Thus counsel's role is limited to protecting the suspect's right against self-incrimination. As the United States Supreme Court has noted in the fifth amendment context, the purpose of requiring counsel is to preserve *Miranda* rights, not to vindicate the sixth amendment right to the assistance of counsel. See *United States v. Gouveia*, 467 U.S. 180, 188 n.5, 81 L. Ed. 2d 146, 154 n.5, 104 S. Ct. 2292, 2297 n.5 (1984). I believe this observation applies equally under the Illinois Constitution. In fact, the sixth amendment's counterpart in the Illinois Constitution carries the heading, "Rights *after* Indictment." (Emphasis added.) Ill. Const. 1970, art. I, § 8.

With this understanding of precharge counsel's role, the inquiry under the first prong of *Strickland* is whether counsel provided objectively reasonable protection of the suspect's right against self-incrimination. In the instant case, the record contains considerable

evidence that attorney Swaim met this requirement. He explicitly informed Rish that she had a constitutional right to remain silent. When Rish chose to continue speaking with the police, Swaim informed her that she could terminate the discussions at any time. He also advised that he would remain in the room in case "anything got to be a problem." He subsequently accompanied Rish during 35 hours of interrogation—periodically stopping the questions and asking the police to leave the room so he could discuss certain matters with her.

Swaim testified that he did not observe any coercion or mistreatment of Rish by the police. Based on the information Rish gave him about her knowledge of the crime, Swaim did not see a problem with her cooperation in the investigation. During the interrogation, Swaim called State's Attorney William Herzog on the telephone twice to assert Rish's innocence. When Herzog advised that Rish could not go home, Swaim became furious and threatened to sue the State on her behalf.

Rish does not dispute these facts; rather, she speculates about Swaim's loyalty because of his acquaintance with the victim and a police officer. But the facts illustrate that Swaim fulfilled his limited precharge responsibilities in an objectively reasonable manner. Thus, Rish cannot carry her burden under the first prong of *Strickland*, and the circuit court properly dismissed count one of her postconviction petition.

## Count IV: Prosecutorial Misconduct

Our supreme court has aptly observed that "[i]f *** the knowledge of every State employee who is involved in a criminal case is imputed to the prosecution, the control over criminal cases would be placed in the hands, and at the mercy, of every employee who touches the case." *People v. Robinson*, 157 Ill. 2d 68, 80 (1993). Accordingly, imputation depends on factors like reasonableness, whether the failure to transmit knowledge up the informational chain was inadvertent or intentional, and whether real prejudice occurred. *Robinson*, 157 Ill. 2d 68.

The evidence indicates that Officer Willis did not intend to conceal his "electric chair" comment to Rish; after all, he repeated the comment to millions of people on national television. Furthermore, I do not believe Rish suffered real prejudice as a result of the comment. Even if the jury believed she told the truth about Detective Erickson threatening her with the electric chair, the State still presented compelling circumstantial evidence of her guilt. For instance, she was involved in purchasing materials to construct the burial box, purchasing the water left inside the box with the victim, and casing the victim's house. Additionally, her fingerprints were discovered on a

tape recorder used during one of the ransom calls. Such facts support a reasonable inference that Rish gave inconsistent statements because she wanted to conceal her guilt, not because she was frightened by a single comment about the electric chair.

Under these circumstances, it would be unreasonable to impute Willis's knowledge about the "electric chair" comment to the prosecution. The court properly dismissed count IV of Rish's postconviction petition.

For the foregoing reasons, I respectfully dissent from those portions of the majority's opinion dealing with counts I and IV.